IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| TRISTATE HVAC EQUIPMENT, LLP, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 10-1054 |
| | : | |
| BIG BELLY SOLAR, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |
| | : | |

## MEMORANDUM

YOHN, J.                                                                          October 20, 2010

 TriState HVAC Equipment, LLP ("TriState") brings this action against Big Belly Solar,

Inc. ("Big Belly"), alleging breach of contract, breach of the implied covenant of good faith and

fair dealing, tortious interference with a prospective contractual relation, unjust enrichment, and

unfair competition under both section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and the

common law. Currently before the court is Big Belly's motion to dismiss for lack of subject-

matter jurisdiction under Fed. R. Civ. P. 12(b)(1) or, in the alternative, to dismiss for improper

venue under Fed. R. Civ. P. 12(b)(3), to dismiss for failure to state a compulsory counterclaim in

a prior state-court action, or to transfer venue to the District of Massachusetts under 28 U.S.C.

§ 1404(a).

# I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises from a distribution agreement between TriState, a Pennsylvania limited liability partnership with a principal place of business in West Conshohocken, Pennsylvania, and Big Belly, a Delaware corporation with a principal place of business in Needham, Massachusetts. (Compl. ¶¶ 1–2.) The following summary is based on the allegations in TriState's complaint, which I assume to be true for the purposes of Big Belly's motion to dismiss for lack of subject-matter jurisdiction, *see McCann v. George W. Newman Irrevocable Trust*, 458 F.3d 281, 290 (3d Cir. 2006), as well as the distribution agreement and documents from an earlier Massachusetts state-court action brought by Big Belly against TriState, both of which Big Belly attached to its motion to dismiss, *see Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (noting that "[t]o decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record").[1]

Big Belly appointed TriState as a nonexclusive distributor of its solar-powered trash-compactor products[2] in the territory covering Pennsylvania, New Jersey, and Delaware, but,

---

[1] The Third Circuit has held that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar.*, 998 F.2d at 1196.

Courts have defined public records, for purposes of what may properly be considered on a motion to dismiss, to include documents from prior state-court adjudications. *See, e.g.*, *Giragosian v. Ryan*, 547 F.3d 59, 66 (1st Cir. 2008), *cert. denied*, 129 S. Ct. 2020 (2009); *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) ("[W]e may also look to public records, including complaints filed in state court, in deciding a motion to dismiss.").

[2] As TriState explains in its complaint, these are garbage bins equipped with a 40-watt solar panel that powers a battery-operated trash compactor, which increases the bin's capacity at least fourfold. An indicator light on the garbage bin lights up when the bin is full, and a wireless device can be installed to inform a remote monitor that the bin needs to be emptied. (Compl.

under the distribution agreement, reserved the right to sell directly to so-called key and national accounts, a list of which was to be provided by the company. (Compl. ¶¶ 7–12; Def.'s Mem. of Law in Supp. of Def.'s Mot. to Dismiss, or, in the Alternative, to Transfer Venue ("Def.'s Mem.") Ex. 1, Distribution Agreement ("Agreement") § 3(a), (c).)[3] Big Belly recognized that its sales to these key and national accounts might require participation by its local distributors, and the distribution agreement provided that distributors such as TriState would be entitled to 25 percent of their normal margin if Big Belly involved the distributor in a sale to one of these accounts. (Compl. ¶ 11; Agreement § 3(c), Sch. A; Def.'s Mem. at 2.) Big Belly also reserved the right not to accept, in its sole discretion, any order submitted by a distributor. (Agreement § 10(a).)

TriState asserts that Big Belly never provided a list of key or national accounts. (Compl. ¶ 13.) TriState claims that on February 1, 2008, it sent Big Belly a list of its sales targets, which included the City of Philadelphia (the "City"), and that on February 26, 2008, Rick Gaudette, then Big Belly's vice president of sales, confirmed that Big Belly would not be pursuing the City as one of its own accounts. (*Id.* ¶¶ 14–15, 18.) Thereafter, TriState began its marketing effort to sell Big Belly products to the City, contacting the City's Streets Department, the "Green Plan of Philadelphia," and individuals in the administration of Michael Nutter, the City's mayor. (*Id.* ¶¶ 19–22.) TriState asserts that it placed Big Belly trash compactors at the University of Pennsylvania and Drexel University, and that individuals from those schools "actively discuss[ed] the Big Belly trash cans with the City on behalf of TriState." (*Id.* ¶¶ 25–26.) TriState

¶¶ 5, 68.)

[3] Key accounts were defined as accounts located within a given territory, and national accounts were defined as those that spanned multiple territories. (*Id.* ¶ 9.)

claims that on May 7, 2008, Gaudette again confirmed that the City was a TriState account and that Big Belly would not be pursuing the City—according to TriState, Gaudette said, "We continue to support your efforts to win Philly." (*Id.* ¶ 23.)

In September 2008, sometime after Gaudette left Big Belly, TriState updated William M. Eddy, Big Belly's director of sales, on its sales efforts, including its efforts to sell Big Belly products to the City. (*Id.* ¶¶ 27–29.) According to TriState, Eddy neither identified the City as a key account of Big Belly's nor instructed TriState not to market to the City. (*Id.* ¶ 30.)

In February or March 2009, Jack Kutner, a vice president at Big Belly, told TriState that Big Belly was in direct discussions with the City's Streets Department regarding the sale of Big Belly products. (*Id.* ¶¶ 32–33.) TriState sent an e-mail to Eddy to confirm that the City was one of TriState's accounts, but Eddy never acknowledged that the City was in fact a TriState account. (*Id.* ¶¶ 37–38.)

On April 16, 2009, TriState sent an e-mail to several individuals in the office of Mayor Nutter identifying TriState as a distributor for Big Belly products and describing the efforts the company had been making to sell Big Belly trash compactors to the City. (*Id.* ¶ 39.) An executive assistant in the Office of Sustainability responded to TriState's e-mail, advising the company that its proposal had been forwarded to the City's director of strategic initiatives. (*Id.* ¶ 41.) TriState was unable to contact the director of strategic initiatives, and the director never contacted TriState. (*Id.* ¶¶ 42–43.) TriState monitored the City's website, but the City never issued a request for proposal ("RFP") for Big Belly trash compactors. (*Id.* ¶ 44.) TriState later learned that Mayor Nutter would be holding a press conference on April 30, 2009, to announce the City's purchase of 500 Big Belly trash compactors for Center City. (*Id.* ¶ 45.)

On April 30, 2009, the same day as the scheduled press conference, TriState met with Eddy and Kutner at TriState's facility in West Conshohocken. (*Id.* ¶ 46.) When asked about the City, Kutner allegedly said that Big Belly had entered into a contract for the sale of its trash compactors to the City, explaining that Big Belly "sole-sourced" the contract. (*Id.* ¶¶ 48–50.) According to TriState, Kutner said that Big Belly had informed the City that it had to buy directly from Big Belly and that the City did not have to put the contract out for bid to distributors. (*Id.* ¶ 51.) TriState then asked to be compensated for its sales efforts with the City, as provided for in the distribution agreement, but Kutner allegedly refused to compensate TriState, even though Big Belly was allegedly aware "of the considerable efforts made by TriState." (*Id.* ¶ 55–57.)[4]

The next month, TriState met with various individuals from the City, including members of the Streets Department, the Procurement Office, and the Controller's Office. (*Id.* ¶¶ 59–65.) During a meeting with the Streets Department, TriState was informed that Eddy, Big Belly's director of sales, had told the City not to put the contract for Big Belly trash compactors out for bid. Eddy allegedly said that the City could purchase trash compactors with the desired wireless configuration only from Big Belly, that Big Belly could give the City the best price, and that the City did not need to purchase the trash compactors through a Big Belly distributor. (*Id.* ¶ 61.)

Allegedly because Big Belly refused to compensate TriState for its efforts to sell Big Belly trash compactors to the City—efforts that TriState believed had contributed to Big Belly's

_____

[4] TriState asserts that Big Belly included another distributor in the contract with the City and allocated $84,000 of the contract to that distributor. (*Id.* ¶ 74.) TriState further alleges that Eddy subsequently told TriState that "in hindsight, TriState should have been the distributor included in the contract." (*Id.* ¶ 75.)

contract with the City—TriState withheld payments owed to Big Belly under the distribution agreement. (Def.'s Mem. at 11.; *id.* Ex. 4 ("Mass. Compl.") Ex. 3, E-mail from Joe Callahan to Jack Kutner (Sept. 18, 2009).) As a result, Big Belly terminated the distribution agreement for cause on August 31, 2009, and on November 3, 2009, Big Belly brought suit in Massachusetts state court against Tristate for payment of the outstanding debt (Def.'s Mem. at 2 n.1; Mass. Compl.). That suit was voluntarily dismissed by Big Belly under Mass. R. Civ. P. 41(a)(1) on January 20, 2010, after TriState agreed to pay its outstanding debt, but before TriState entered an appearance or served a pleading in the action. (Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Mem.") at 22; Def.'s Mem. at 2 n.1; *id.* Ex. 6 ("Mass. Docket") entry no. 12.)

TriState filed this action against Big Belly on March 10, 2010, alleging six counts. TriState alleges that Big Belly breached the distribution agreement by failing to identify the City as a key account and by failing to compensate TriState for its participation in the sale of Big Belly trash compactors to the City, as required by the agreement (Count I). (Compl. ¶¶ 79–84.) TriState claims that it spent a significant amount of time and resources educating City officials about the benefits of Big Belly's trash compactors and that these marketing efforts contributed to Big Belly's contract with the City and thus conferred a substantial benefit on Big Belly. By failing to compensate TriState for its marketing efforts, TriState alleges, Big Belly was unjustly enriched and profited at TriState's expense (Count VI). (*Id.* ¶¶ 121–125.)

TriState further alleges that by instructing the City not to put the Big Belly trash-compactor contract out for bid and by making false or misleading statements to the City—namely, that the City could purchase Big Belly trash compactors with the desired wireless configuration only from Big Belly—Big Belly breached the implied covenant of good faith and

fair dealing in the distribution agreement (Count II), tortiously interfered with TriState's prospective contractual relationship with the City (Count III), and engaged in unfair competition under both the Lanham Act and the common law (Counts IV and V). (*Id.* ¶¶ 91–92, 96–99, 103–112, 114–119.) TriState alleges that "[h]ad Big Belly not improperly insisted on a sole-sourced contract and erroneously promised the City that it would get the 'best price' for the Big Belly trash cans from Big Belly, and had [an] RFP been issued for the Big Belly trash cans, TriState's more competitive proposal would have prevailed over Big Belly's." (*Id.* ¶ 67.)

TriState seeks actual and consequential damages, including anticipated profits from its prospective contractual relationship with the City, as well as attorney's fees and costs.

On April 12, 2010, Big Belly filed a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) or, in the alternative, to dismiss for failure to state a compulsory counterclaim in a prior state-court action, to dismiss for improper venue under Rule 12(b)(3), or to transfer venue to the District of Massachusetts under 28 U.S.C. § 1404(a).

## II.     DISCUSSION

TriState asserts that the court has subject-matter jurisdiction over this action on the basis of both diversity of citizenship under 28 U.S.C. § 1332 and the presentation of a federal question under 28 U.S.C. § 1331. Big Belly challenges both of those grounds and argues that TriState's complaint should be dismissed for lack of subject-matter jurisdiction. Big Belly further argues that even if this court has subject-matter jurisdiction, the complaint should be dismissed because TriState failed to assert a compulsory counterclaim in the prior Massachusetts state-court action. Finally, Big Belly contends that because the distribution agreement contains a forum-selection clause designating the Commonwealth of Massachusetts as the venue for any legal disputes, this

action should either be dismissed for improper venue under Rule 12(b)(3) or transferred to the District of Massachusetts under 28 U.S.C. § 1404(a).

I consider first Big Belly's challenge to federal-question jurisdiction.

### A.  Federal-Question Jurisdiction

Big Belly argues that TriState's complaint fails to state a claim under the Lanham Act and thus fails to present a federal question upon which jurisdiction may be based under 28 U.S.C. § 1331. In attacking the legal sufficiency of TriState's claim, however, Big Belly has "confused the issue of subject matter jurisdiction with the separate and distinct issue of whether the complaint state[s] a cause of action." *Johnsrud v. Carter*, 620 F.2d 29, 32 (3d Cir. 1980).

The court has federal-question jurisdiction where a plaintiff "makes a non-frivolous allegation that he or she is entitled to relief because the defendant's conduct violated a federal statute." *Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1281 (3d Cir. 1993). It is well settled that the "legal insufficiency of a federal claim generally does not eliminate the subject matter jurisdiction of a federal court." *Id.* at 1280; *see also Bell v. Hood*, 327 U.S. 678, 682 (1946) ("Whether the complaint states a cause of action on which relief could be granted is a question of law and . . . must be decided after and not before the court has assumed jurisdiction over the controversy."). As the Third Circuit has explained, "dismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Kulick v. Pocono Downs Racing Ass'n*, 816 F.2d 895, 899 (3d Cir. 1987) (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)). In this case, TriState claims that Big Belly made false or

misleading statements to the City in violation of the Lanham Act, and I cannot conclude that the claim is "insubstantial on [its] face." *Lunderstadt v. Colafella*, 885 F.2d 66, 70 (3d Cir. 1989) (internal quotation marks and citation omitted). The court thus has subject-matter jurisdiction over the claim.

### B. Treating the Rule 12(b)(1) Motion as a Rule 12(b)(6) Motion

To the extent that Big Belly argues that TriState has failed to state a claim upon which relief may be granted, however, Big Belly's motion is more properly construed as a motion to dismiss under Rule 12(b)(6) and, having established jurisdiction, I will treat it as such.

Although the Third Circuit, recognizing that "the standard for surviving a Rule 12(b)(1) motion is lower than that for a Rule 12(b)(6) motion," has "cautioned against treating a Rule 12(b)(1) motion as a Rule 12(b)(6) motion and reaching the merits of the claims," *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000), there is no reason not to do so where, as here, the plaintiff itself treats the motion as having been made under Rule 12(b)(6), *see Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). In its response in opposition to Big Belly's motion to dismiss, TriState cited the legal standards under Rule 12(b)(6), rather than those under Rule 12(b)(1), and argued that it had sufficiently pleaded all the elements of a Lanham Act claim. (*See, e.g.*, Pl.'s Mem. at 8 ("In deciding a motion to dismiss for failure to state a claim upon which relief can be granted, . . . ."); *id.* at 11–18 (reaching the merits and discussing the elements of its Lanham Act claim and concluding that its complaint "unquestionably pleads an adequate Lanham Act claim").)

Moreover, because I will employ the legal standards that govern a Rule 12(b)(6) motion, rather than those that govern a Rule 12(b)(1) motion, there is no risk of prejudicing TriState. *See*

*Kehr Packages*, 926 F.2d at 1409. When a defendant challenges subject-matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of persuasion. *See id.* But here, under Rule 12(b)(6), Big Belly bears the burden of showing that no claim has been stated. *See id.* This situation may thus be distinguished from that in *Johnsrud v. Carter*, in which by "fus[ing] the two distinct concepts and dismiss[ing] the complaint for lack of subject matter jurisdiction because it failed to state a claim," the district court "in effect shifted to the plaintiffs the burden which properly was the Government's on a motion to dismiss under [Rule] 12(b)(6) and deprived the plaintiffs of the procedural safeguards to which they were entitled." 620 F.2d at 33.

### 1.      Legal Standard

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual allegations "that are 'merely consistent with' a defendant's liability," or that permit the court to infer no more than "the mere possibility of misconduct" are not enough. *Id.* at 1949–50 (quoting *Twombly*, 550 U.S. at 557). Rather, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. In evaluating a motion to dismiss, "the factual and legal elements of a claim should be separated." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210–11; *see also Iqbal*, 129 S. Ct. at 1950 (asserting that a court should assume the veracity of well-pleaded factual allegations, but legal conclusions "are not entitled to the assumption of truth").

### 2.       The Lanham Act

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), creates a cause of action for false

or misleading statements concerning one's own, or another's, product or commercial activities.

That section provides, in relevant part, that

> [a]ny person who, . . . in commercial advertising or promotion, misrepresents the
> nature, characteristics, qualities, or geographic origin of his or her or another
> person's goods, services, or commercial activities, shall be liable in a civil action
> by any person who believes that he or she is or is likely to be damaged by such
> act.

15 U.S.C. § 1125(a)(1).

TriState alleges that Big Belly made false or misleading statements to the City—namely,

that the City could purchase Big Belly trash compactors with the desired wireless configuration

only from Big Belly, that Big Belly could give the City the best price, and that the City did not

have to put the contract for the trash compactors out for bid to distributors (Compl. ¶¶ 51, 67,

105.)

Big Belly argues that (a) the misrepresentations that TriState alleges were not made in

"commercial advertising or promotion," and thus are not within the scope of the Lanham Act,

and (b) in any event, Big Belly made no misrepresentations. Because I agree that TriState has

not alleged any misrepresentations by Big Belly, I conclude that TriState has failed to state a

claim under section 43(a) of the Lanham Act and will therefore grant Big Belly's motion to

dismiss the claim.[5]

---

[5] Because this issue is dispositive, I need not address whether Big Belly's alleged
statements to the City constituted "commercial advertising or promotion."

Big Belly also contends that TriState, in alleging misrepresentations by Big Belly, has
not met the heightened pleading standard articulated in *Max Daetwyler Corp. v. Input Graphics,
Inc.*, 608 F. Supp. 1549 (E.D. Pa. 1985). The court asserted:

Big Belly contends that because it reserved the right not to accept any order placed by a distributor—and thus could have refused to accept TriState's order if the City had instead sought to purchase trash compactors from TriState rather than directly from Big Belly—its statements that the City could purchase the trash compactors only from Big Belly were neither false nor misleading.

I agree. To the extent that Big Belly considered the City one of its own accounts and sought to sell directly to the City, rather than through TriState or another distributor, telling the City that it had to purchase directly from Big Belly is not, contrary to TriState's allegations, a misrepresentation. Whether TriState could have equipped the trash compactors with the desired wireless configuration—and whether Big Belly knew that TriState had that capability—is

---

Although Federal Rule of Civil Procedure 8 requires a party to plead only a "short and plain statement of the claim," Rule 9 requires that fraud and mistake be pleaded with greater specificity. The Lanham Act claim in the present case is not a pure "fraud" claim and, thus, need not satisfy all of the pleading requirements which have been imposed under Rule 9. But the policies which underlie Rule 9's requirement that the nature of an alleged misrepresentation be pleaded with specificity are equally applicable to the type of misrepresentation claims presented in plaintiffs' Lanham Act claim. In litigation in which one party is charged with making false statements, it is important that the party charged be provided with sufficiently detailed allegations regarding the nature of the alleged falsehoods to allow him to make a proper defense.

*Max Daetwyler*, 608 F. Supp. at 1556.

Although the Third Circuit has not yet addressed the pleading standard applicable to false-advertising claims under the Lanham Act, several courts in this circuit have adopted the *Max Daetwyler* standard. *See, e.g.*, *Trans USA Prods., Inc. v. Howard Berger Co.*, No. 07-5924, 2008 WL 852324, at *5 (D.N.J. Mar. 28, 2008); *EVCO Tech. & Dev. Co. v. Buck Knives, Inc.*, No. 05-CV-6198, 2006 WL 2773421, at *3–*5 (E.D. Pa. Sept. 22, 2006). Other courts, however, disagree. *See, e.g.*, *Wellnx Life Scis., Inc. v. Iovate Health Scis. Research, Inc.*, 516 F. Supp. 2d 270, 283 n.2 (S.D.N.Y. 2007) (asserting that Rule 8(a), not Rule 9(b), applies to false-advertising claims under the Lanham Act).

Because I agree that TriState has not alleged any misrepresentations, even under the more liberal pleading standards of Rule 8(a), I need not address the appropriate pleading standard here.

irrelevant, since Big Belly had the right to reject, in its sole discretion, any orders from TriState. Although Big Belly may have, if TriState's allegations are true, misrepresented its intentions regarding the City in its discussions with TriState and may have, as TriState alleges, breached its contractual obligations to TriState by not providing a list of its key and national accounts, such conduct does not implicate the Lanham Act. And Big Belly's failure to identify the City as one of its accounts or to otherwise tell TriState not to market to the City does not render Big Belly's statements to the City false or misleading. Indeed, TriState does not allege that Big Belly's right of refusal was limited in any way—in its brief, TriState does not even respond to Big Belly's argument that its statements to the City were neither false nor misleading because it had the right not to accept an order placed by TriState. TriState thus has not alleged sufficient facts that would support a conclusion that Big Belly's statements to the City were false or misleading.

Because TriState has not alleged any misrepresentations by Big Belly, TriState has failed to state a claim under section 43(a) of the Lanham Act, and I will therefore grant Big Belly's motion to dismiss this claim.

### C.    Diversity Jurisdiction

Because the court has federal-question jurisdiction over TriState's Lanham Act claim, the court could also exercise supplemental jurisdiction over TriState's state-law claims under 28 U.S.C. § 1367, since "[t]he state and federal claims . . . derive from a common nucleus of operative facts," *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1102 (3d Cir. 1995).[6] Nonetheless, because I am granting Big Belly's motion to dismiss TriState's Lanham Act

---

[6] Under § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are

claim, and because a district court "may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c), I must consider whether diversity jurisdiction has been established.

To establish diversity jurisdiction in this case, TriState must show diversity of citizenship between the parties and that the amount in controversy, exclusive of interest and costs, exceeds $75,000. *See* 28 U.S.C. § 1332(a). Big Belly does not dispute diversity of citizenship but argues that the amount in controversy is less than the jurisdictional threshold. In particular, Big Belly contends that under the terms of the distribution agreement, the amount that TriState could potentially recover under its breach-of-contract claim is limited to 25 percent of Big Belly's margin on its sale of trash compactors to the City, which, according to Big Belly, is only $56,485. (*See* Def.'s Mem. at 5; *id.* Ex. 2, Aff. of Steven Delaney ¶¶ 5–7.)[7] TriState does not contest the figure cited by Big Belly, but points out that in addition to breach of contract, it has also alleged breach of the implied covenant of good faith and fair dealing, unjust enrichment, tortious interference with prospective contractual relations, and common-law unfair competition and is seeking damages in excess of $75,000 when all its claims are aggregated.

As a general rule, a plaintiff's claims against a single defendant may be aggregated for purposes of calculating the amount in controversy, except if the claims are alternative bases of recovery for the same harm such that the plaintiff could not be awarded damages for both claims. *See Suber v. Chrysler Corp.*, 104 F.3d 578, 588 (3d Cir. 1997). The Supreme Court described the

so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

[7] To the extent that Big Belly disputes, as a matter of fact, the amount recoverable under the distribution agreement, I may consider evidence submitted by Big Belly. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

standard for determining whether a plaintiff has satisfied the amount-in-controversy requirement as follows:

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim.

*St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938) (footnotes omitted).

In applying the standard established by the Supreme Court, the Third Circuit has explained that "the question whether a plaintiff's claims pass the 'legal certainty' standard is a threshold matter that should involve the court in only minimal scrutiny of the plaintiff's claims." *Suber*, 104 F.3d at 583. "The court should not consider in its jurisdictional inquiry the legal sufficiency of those claims or whether the legal theory advanced by the plaintiffs is probably unsound; rather, a court can dismiss the case only if there is a legal certainty that the plaintiff cannot recover more than [the jurisdictional amount]." *Id.*[8]

---

[8] Big Belly argues for the first time in its reply brief that TriState's unjust-enrichment, tortious-interference, and common-law unfair-competition claims lack merit and should not be taken into account for purposes of determining the amount in controversy. Big Belly also moves, in its reply brief, to dismiss those claims under Rule 12(b)(6). Although TriState could have objected and sought leave from the court to submit a sur-reply brief to respond to Big Belly's new arguments and its motion to dismiss to these claims, I will not penalize TriState for its failure to do so. Fairness dictates that TriState be given an opportunity to respond to Big Belly's new arguments, as well as its new motion to dismiss, and I will thus exercise my discretion to disregard Big Belly's arguments and this new Rule 12(b)(6) motion. *See United States ex rel. Purcell v. MWI Corp.*, 520 F. Supp. 2d 158, 166 (D.D.C. 2007) ("If the movant raises arguments for the first time in his reply to the nonmovant's opposition, the court will either ignore those arguments in resolving the motion or provide the nonmovant an opportunity to respond to those arguments by granting leave to file a sur-reply."); *cf. Booking v. General Star Mgmt. Co.*, 254 F.3d 414, 418 (2d Cir. 2001) (explaining in dicta that "we doubt that district courts lack all discretion to consider arguments raised for the first time in reply briefs—especially when, as

The question whether there is a legal certainty that TriState's claims are for less than $75,000 depends on what damages TriState could potentially recover under the applicable state law. This question, in turn, requires a determination of which state's laws apply.

The distribution agreement contains a choice-of-law provision that states that the agreement "shall be subject to the laws of the Commonwealth of Massachusetts." (Agreement § 22.)[9] The parties do not dispute that, under the choice-of-law provision, Massachusetts law governs TriState's breach-of-contract claim.[10] But the parties have not explicitly addressed whether the choice-of-law provision—and therefore Massachusetts law—also applies to TriState's tort claims. For now, it suffices to observe that both Pennsylvania and Massachusetts

_____

here, they order additional briefing on the argument pressed in the reply brief"); *Malay v. City of Syracuse*, 638 F. Supp. 2d 303, 310 (N.D.N.Y. 2009) (explaining that a court "is within its discretion to disregard" arguments first raised in the defendant's reply papers but concluding nonetheless that "because Plaintiff is not prejudiced by the court's determination as to either newly raised argument, the Court will exercise its discretion to decide same").

[9] The distribution agreement provides, in relevant part: "This Agreement shall be subject to the laws of the Commonwealth of Massachusetts and the Company and Distributor consent to be bound by the provisions of such laws, excluding any choice of law rules that would direct application of the law of any other jurisdiction." (Agreement § 22.)

[10] A federal court exercising diversity jurisdiction must apply the choice-of-law rules of the forum state, in this case, Pennsylvania. *See Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir.1994) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 497 (1941)). Pennsylvania courts generally honor the intent of contracting parties and enforce contractual choice-of-law provisions unless either "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice" or "(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue." *Kruzits*, 40 F.3d at 55 (quoting Restatement (Second) of Conflicts § 187). Neither TriState nor Big Belly argues that the agreement's choice-of-law provision should not be enforced. Nor is there anything to suggest that either of the exceptions to Pennsylvania's general rule of enforcing a contractual choice-of-law provision applies here. Since Big Belly's principal place of business is Massachusetts, that state has a substantial relationship to the parties, and there is no policy reason not to apply Massachusetts law. The choice-of-law provision should therefore be given effect here.

state law recognize a cause of action for tortious interference with prospective contractual relations and provide for damages for the pecuniary loss resulting from such interference. *See Blackstone v. Cashman*, 860 N.E.2d 7, 12–13 (Mass. 2007) (recognizing cause of action for intentional interference with a prospective contractual relation as described in Restatement (Second) of Torts § 766B (1979)[11]); *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 471 (Pa. 1979) (describing the "four elements [that] must appear in a complaint in order for the plaintiff to state a cause of action for intentional interference with prospective contractual relations" under Pennsylvania law); *Pawlowski v. Smorto*, 588 A.2d 36, 40 (Pa. Super. Ct. 1991) (discussing "actual damages" for interference with prospective contractual relations). Because TriState alleges that Big Belly tortiously interfered with its prospective contract with the City and that "it would have earned a profit of approximately $500,000" from that prospective contract (Pl.'s Mem. at 5; *see also id.* Ex. B, Decl. of Joseph M. Callahan ("Callahan Decl.") ¶ 8), and because TriState could potentially recover this amount under either Massachusetts or Pennsylvania law if its claim were to succeed, it does not appear to a legal certainty that TriState's claim is for less than the jurisdictional amount. I will therefore deny Big Belly's motion to dismiss for lack of subject-matter jurisdiction.

### D.      Failure to Plead a Compulsory Counterclaim

Big Belly next contends that TriState's claims are barred because they should have been brought as compulsory counterclaims in the previous Massachusetts state-court action. The

---

[11] Restatement (Second) of Torts § 766B (1979) provides, in relevant part: "One who intentionally and improperly interferes with another's prospective contractual relation . . . is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation . . . ."

question whether TriState's claims are compulsory counterclaims that should have been raised in the Massachusetts proceeding is a question of state law. *See Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 87–88 (2d Cir. 2000); *Fox v. Maulding*, 112 F.3d 453, 456–57 (10th Cir. 1997); *Montgomery Ward Dev. Corp. v. Juster*, 932 F.2d 1378, 1380–82 (11th Cir. 1991); *Pochiro v. Prudential Ins. Co. of America*, 827 F.2d 1246, 1249 (9th Cir. 1987); *Brannan v. Eisenstein*, 804 F.2d 1041, 1044 (8th Cir. 1986). I must therefore look to Massachusetts law to determine whether TriState is precluded from raising its claims here.

The Massachusetts compulsory-counterclaim rule provides, in relevant part:

> A pleading shall state as a counterclaim any claim for relief the court has power to give which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not either require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction or constitute an action required by law to be brought in a county or judicial district . . . other than the county or judicial district in which the court is sitting.

Mass. R. Civ. P. 13(a). And under Massachusetts law, the failure to plead a compulsory counterclaim generally precludes a party from asserting that claim in a later action. *See Nat'l Lumber Co. v. Canton Inst. for Sav.*, 775 N.E.2d 1241, 1242 (Mass. App. Ct. 2002).

TriState contends that because the Massachusetts action was dismissed before TriState was required to enter an appearance or serve a pleading, the compulsory-counterclaim rule does not apply—that is, since no pleading was required, TriState argues that it could not have been required to assert a counterclaim.

The Massachusetts courts have not addressed this issue in any published opinions.[12] But

_____

[12] The Superior Court of Massachusetts, in an unpublished opinion, addressed a related question and held that Fed. R. Civ. P. 13(a) did not bar a party from asserting its claim in state

18

Mass. R. Civ. P. 13(a) is substantially similar to Fed. R. Civ. P. 13(a), and the Massachusetts courts "interpret [their] rules consistently with the construction given their Federal counterparts absent compelling reasons to the contrary or significant differences in content." *Strom v. Am. Honda Motor Co.*, 667 N.E.2d 1137, 1140–41 (Mass. 1996) (internal quotation marks and citations omitted); *see also Rollins Envtl. Servs., Inc. v. Superior Court*, 330 N.E.2d 814, 818 (Mass. 1975) ("This court having adopted comprehensive rules of civil procedure in substantially the same form as the earlier Federal Rules of Civil Procedure, the adjudged construction theretofore given to the Federal rules is to be given to our rules, absent compelling reasons to the contrary or significant differences in content."). It is therefore appropriate to look to federal cases for guidance in applying the compulsory-counterclaim rule.

Although the Third Circuit has not addressed the question at issue here, the Sixth Circuit addressed this question in *Bluegrass Hosiery, Inc. v. Speizman Indus.*, Inc., 214 F.3d 770 (6th Cir. 2000). The court noted that "Rule 13(a) . . . requires a compulsory counterclaim [only] if the party who desires to assert a claim has served a pleading," and that "[w]here the rules do not require a pleading because of pending motions, the compulsory counterclaim requirement of Rule 13(a) is inapplicable." *Bluegrass Hosiery*, 214 F.3d at 772. Because the parties in the previous state-court action had agreed to settle the dispute before the defendant's answer was due, no pleading was ever filed or required. *See id.* And because no pleading was ever required, the defendant in that state-court action was not required to assert any counterclaims under Rule 13(a). *See id.* The Sixth Circuit thus concluded that the failure to assert compulsory

---

court where that party had filed a motion to dismiss in lieu of a responsive pleading in an earlier federal-court action and the motion to dismiss was granted. *See New England Power Co. v. Town of Norwood*, No. 982650A, 2001 WL 292974, at *10–*11 (Mass. Super. Ct. Feb. 8, 2001).

counterclaims in the prior state-court action did not preclude the state-court defendant from asserting its claims in the later federal-court proceeding. *See id.* at 772–73;[13] *cf. Bateman v. FDIC*, 112 F. Supp. 2d 89, 94 (D. Mass. 2000) (finding rule that "when the United States sues it waives immunity as to compulsory counterclaims for recoupment even if those claims would ordinarily be barred by the FTCA" inapplicable where the government's complaint "was voluntarily and effectively dismissed without prejudice . . . before an answer was filed" and defendant was thus precluded from asserting compulsory counterclaims).

Applying similar reasoning, other circuits have asserted that because a Rule 12(b)(6) motion to dismiss is not a pleading, the compulsory-counterclaim rule of Rule 13(a) "does not come into play when a defendant files only a motion to dismiss." *Mellon Bank, N.A. v. Ternisky*, 999 F.2d 791, 795 (4th Cir. 1993); *accord Horn & Hardart Co. v. Nat'l Rail Passenger Corp.*, 843 F.2d 546, 549 (D.C. Cir. 1988); *Lawhorn v. Atl. Refining Co.*, 299 F.2d 353, 356–58 (5th Cir. 1962).

I find the reasoning of these cases persuasive, and I therefore conclude that because the previous Massachusetts state-court action was dismissed before TriState was required to file a pleading, the compulsory-counterclaim rule does not preclude TriState from asserting its claims here.

---

[13] Although the earlier action was a state-court proceeding, the Sixth Circuit apparently analyzed the issue under the federal compulsory-counterclaim rule, not the state-court rule. *See id.* at 771–72.

### E.     Venue

Finally, Big Belly contends that because the distribution agreement contains a forum-selection clause designating the Commonwealth of Massachusetts as the venue for any legal disputes, this action should either be dismissed for improper venue under Rule 12(b)(3) or transferred to the District of Massachusetts under 28 U.S.C. § 1404(a).[14]

### 1.     Motion to Dismiss for Improper Venue

A defendant seeking dismissal under Rule 12(b)(3) bears the burden of showing that venue is improper. *See Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724–25 (3d Cir. 1982). Because Big Belly has not met this burden, I will deny Big Belly's motion to dismiss for improper venue.

The effect a federal court is to give a contractual forum-selection clause is determined by federal, not state, law, and the Third Circuit has held that a forum-selection clause does not render venue improper in an otherwise proper forum. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877–79 (3d Cir. 1995); *cf. Salovaara v. Jackson Nat'l Life Ins. Co*., 246 F.3d 289, 298 (3d Cir. 2001) (asserting that where venue is otherwise proper but a forum-selection clause specifies a different forum, "it is inappropriate to dismiss pursuant to 28 U.S.C. § 1406,"[15] but noting that although a transfer is preferred, "a 12(b)(6) dismissal is a permissible means of enforcing a forum selection clause that allows suit to be filed in another federal forum"). The question

---

[14] The distribution agreement provides: "The Commonwealth of Massachusetts, USA, shall be the place of performance of this Agreement and the venue for any legal disputes." (Agreement § 22.)

[15] Under 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

whether venue is proper in this district, therefore, is governed solely by the federal venue statute, 28 U.S.C. § 1391.

> Venue is proper in
>
> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . , or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).[16]

In this case, venue is proper under 28 U.S.C. § 1391(b)(2) because a "substantial part of the events or omissions giving rise to [TriState's] claim" occurred in this district. TriState's claims are based in substantial part on Big Belly's sale of trash compactors—as well as the marketing efforts by both TriState and Big Belly preceding that sale—to the City, which is located in this district. Of course, to the extent that TriState's breach-of-contract claim is based on Big Belly's failure to make a payment allegedly owed to TriState, that omission may be said to have occurred in Massachusetts. *See Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 295 (3d Cir. 1994) (explaining that the defendant's failure to remit payments occurred in Michigan, where the defendant was located, even though the payments were to be sent to the plaintiff in Pennsylvania). But the venue statute does not require that a court determine "the best forum," *id.* at 294 (internal quotation marks and citation omitted), or "the forum with the most

---

[16] The court has federal-question jurisdiction over TriState's Lanham Act claim, notwithstanding that I am granting Big Belly's motion to dismiss that claim under Rule 12(b)(6). Accordingly, 28 U.S.C. § 1391(b), which addresses venue where jurisdiction is not based solely on diversity jurisdiction, applies. The analysis would be the same under 28 U.S.C. § 1391(a), which addresses venue where jurisdiction is based only on diversity jurisdiction, since clauses (1) and (2) are the same under both 28 U.S.C. § 1391(a) and 28 U.S.C. § 1391(b).

substantial events," *Superior Precast, Inc. v. Safeco Ins. Co. of Am.*, 71 F. Supp. 2d 438, 444

(E.D. Pa. 1999). Indeed, venue may be proper in more than one district. *See id.*

For its part, Big Belly does not appear to dispute that venue is proper under 28 U.S.C.

§ 1391. Rather, Big Belly contends only that the forum-selection clause should be enforced.[17]

Because Big Belly has failed to show that venue in this district is improper, I will deny Big

Belly's motion to dismiss under Rule 12(b)(3).

### 2. Motion to Transfer to the District of Massachusetts

Big Belly has requested, in the alternative, that the case be transferred under 28 U.S.C.

§ 1404(a) to the District of Massachusetts, the forum specified in the distribution agreement.

TriState argues, however, that the forum-selection clause is inapplicable because the clause did

not survive Big Belly's termination of the distribution agreement on August 31, 2009.[18] TriState

further contends that even if the forum-selection clause survived termination of the agreement,

the clause does not apply to its tort and Lanham Act claims.

#### a. *Does the Forum-Selection Clause Apply?*

A forum-selection clause "is presumptively valid and will be enforced by the forum

unless the party objecting to its enforcement establishes (1) that it is the result of fraud or

---

[17] Big Belly asserts that "the parties expressly agreed in writing that Massachusetts is the proper venue for any legal disputes, that the parties expressly agreed in writing that Massachusetts law applies to the Agreement, that Big Belly is located in Massachusetts, [that] the majority of Big Belly's witnesses are in Massachusetts, and [that] the place of performance of the Agreement was Massachusetts," and contends that these factors render venue improper in this district. (Def.'s Mem. at 13.) These factors may be relevant in determining whether venue should be transferred to the District of Massachusetts under 28 U.S.C. § 1404(a), but they have no bearing on the threshold determination as to whether venue is proper in this district.

[18] Big Belly terminated the distribution agreement for cause on August 31, 2009, after TriState failed to pay amounts due under the agreement. (*See* Def.'s Mem. at 2 n.1.) The events giving rise to TriState's claims, however, occurred before the agreement was terminated.

overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *Coastal Steel Corp. v. Tilghman Wheelbrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983), *overruled on other grounds by Lauro Lines v. Chasser*, 390 U.S. 495 (1989).

TriState has not alleged that the forum-selection clause is unenforceable. Instead, TriState argues that the forum-selection clause in the parties' distribution agreement did not survive the termination of the agreement. As further support for its argument, TriState contends that because the agreement contains a paragraph expressly providing for the survival of certain enumerated provisions after termination of the agreement, the exclusion of the forum-selection clause from that "survival" clause necessarily implies that the forum-selection clause does not survive the termination of the agreement.[19]

---

[19] TriState cites several cases in support of its assertion that, "[a]s a matter of law," a forum-selection clause terminates upon termination of the contract (Pl.'s Mem. at 24), but TriState's reliance on them is misplaced. *See Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V.*, 145 F.3d 505, 509 (2d Cir. 1998) (addressing not whether the forum-selection clause survived termination of the contract, but whether the parties "entered into a contract" and "whether that contract contain[ed] a forum-selection agreement"); *Mobilificio San Giacomo S.p.A. v. Stoffi*, No. C.A. 96-415, 1998 WL 125534, at *6–*9 (D. Del. Jan. 29, 1998) (addressing the applicability of a forum-selection clause to claims arising from conduct that occurred after termination of the agreement); *Lockwood Corp. v. Black*, 501 F. Supp. 261 (N.D. Tex. 1980) (finding forum-selection clause inapplicable where claim was based on transactions that occurred after contract was terminated), *aff'd*, 669 F.2d 324 (5th Cir. 1982).

Nor can TriState properly draw support from *Thome v. Layne*, No. 05-CV-02244, 2006 WL 1488895 (D. Colo. May 30, 2006), or *PFIP, LLC v. You-Fit, Inc.*, No. 08-271, 2009 WL 1121359 (D.N.H. Apr. 27, 2009), for TriState's contention that exclusion of the forum-selection clause from the "survival" clause renders the forum-selection clause inapplicable. In *Thome*, the court recognized that a purchase agreement terminated a previous agreement between the parties and concluded that the purchase agreement's arbitration clause, rather than the earlier agreement's forum-selection clause, governed the parties' dispute. *See* 2006 WL 1488895, at *2–*4. *PFIP* is similarly distinguishable. In that case, the franchise agreement's forum-selection

24

This argument lacks merit and, indeed, has been rejected by several other courts. *See Versar, Inc. v. Ball*, No. CIV.A. 01-1302, 2001 WL 818354, at *2 (E.D. Pa. July 12, 2001); *Texas Source Group, Inc. v. CCH, Inc.*, 967 F. Supp. 234, 238 (S.D. Tex. 1997); *Allied Sound, Inc. v. Dukane Corp.*, 934 F. Supp. 272, 275 (M.D. Tenn. 1996); *Young Women's Christian Ass'n of the U.S. v. HMC Entm't, Inc.*, No. 91 Civ. 7943, 1992 WL 279361, at *4 (S.D.N.Y. Sept. 25, 1992); *Advent Elecs., Inc. v. Samsung Semiconductor, Inc.*, 709 F. Supp. 843, 846 (N.D. Ill. 1989); *see also* 13 *Corbin on Contracts* § 67.2, at 12 (rev. ed. 2003) ("Although termination and cancellation of an agreement extinguish future obligations of both parties to the agreement, neither termination nor cancellation affect those terms that relate to the settlement of disputes or choice of law or forum selection clauses."). Similar reasoning applies in the context of contractual arbitration clauses. *See*, *e.g.*, *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 205–06 (1991) (explaining that a postexpiration dispute involving "facts and occurrences that arose before expiration" of the contract "can be said to arise under the contract" and thus is

---

clause applied, by its terms, not just to the franchisee company but also to the company's owners. *See* 2009 WL 1121359, at *7. At issue was whether the forum-selection clause continued to apply to one of the defendants, even though he sold his ownership interest in the franchisee company before the alleged conduct giving rise to the plaintiffs' claims occurred. *See id.* at *7 & n.12. Upon transferring his ownership interest, the defendant was required to execute a new agreement in which he agreed to be bound by certain provisions of the original franchise agreement; the forum-selection clause was not among those provisions. *See id.* at *8. After considering other provisions of the franchise agreement and the structure of that agreement, the court concluded that the parties did not intend that the forum-selection clause would continue to apply to former owners: "When the forum selection clause is read together with the other provisions of the franchise agreement, . . . the clause simply cannot bear the significance the plaintiffs ascribe to it, i.e., that it forever commits anyone who owned a piece of the franchisee at the time the agreement was signed to being sued [in the designated forum]." *Id.* at *9. Crucial to the court's analysis was the fact that the plaintiffs' claims accrued after the defendant sold his ownership interest—indeed, the court noted that if plaintiffs "were suing [the defendant] for actions he took . . . while he still owned the company, . . . the choice-of-forum clause would very likely still apply to him despite an intervening transfer of ownership." *Id.* at *7 n.12.

subject to the contract's arbitration provision).

To adopt TriState's reasoning would significantly limit the intended scope of the forum-selection clause in this case. The forum-selection clause applies to "any legal dispute[]" (Agreement § 22), and there is nothing to suggest that the parties intended that the clause would not apply to disputes regarding an alleged breach of contract. But under TriState's reasoning, such disputes could very well be excluded from the scope of the forum-selection clause because the agreement also allows either party to terminate the contract in the event of a breach by the other party. (*Id.* § 20(b)(iv).) Under TriState's view, whether the forum-selection clause applies to a breach-of-contract dispute would depend on whether the nonbreaching party exercised its right, in its sole discretion, to terminate the contract. Such an interpretation distorts the common-sense meaning of the forum-selection clause and is inconsistent with traditional principles of contract interpretation.

The fact that the agreement expressly provides for the survival of certain other contractual provisions, but not the forum-selection clause, does not alter the analysis. The exclusion of the forum-selection clause from the "survival" clause—which, as a general matter, is intended to ensure the survival of certain contractual provisions that might otherwise be extinguished upon termination of the agreement—simply does not evidence a clear intent that, upon termination of the agreement, the forum-selection clause would cease to apply to claims arising under the agreement. I thus conclude that the forum-selection clause did not terminate upon Big Belly's termination of the agreement.

The next question is whether the forum-selection clause applies to TriState's tort claims in addition to its contract claims. Neither party has fully addressed this question. TriState

contends, in a footnote, that the forum-selection clause does not apply to its tort claims, but cites no case law and provides no argument in support of its contention.

Although the scope of a forum-selection clause depends on the specific language of the clause, courts have generally held that a forum-selection clause applies to tort and other non-contract claims that require interpretation of the contract or otherwise implicate the contract's terms. *See, e.g.*, *Omron Healthcare, Inc. v. Maclaren Exports, Ltd.*, 28 F.3d 600, 601–03 (7th Cir. 1994) (holding that forum-selection clause governed trademark-infringement claim where resolution of dispute depended on interpretation of the contract); *Crescent Int'l, Inc. v. Avatar Communities, Inc.*, 857 F.2d 943, 944–45 (3d Cir. 1988) (holding that forum-selection clause applied to RICO, fraud, unfair-competition, and tortious-interference claims because they implicated the terms of the agreement); *Bense v. Interstate Battery Sys. of Am., Inc.*, 683 F.2d 718, 720–21 (2d Cir. 1982) (applying forum-selection clause to antitrust claim); *see also Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) ("Whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract.").

Here, resolution of TriState's tortious-interference and unfair-competition claims will require interpretation of the distribution agreement. Big Belly's defense to TriState's tortious-interference claim, for example, is that TriState could not have "competed with Big Belly for a City contract," because, "under the terms of the distribution agreement," Big Belly reserved the right not to sell to TriState. (Def.'s Reply Mem. at 8–9.) Similarly, Big Belly's defense to TriState's unfair-competition claim is that because Big Belly reserved the right not to approve TriState's sales, it did not make any misrepresentations to the City or otherwise "unfairly

prevent[]" TriState "from bidding on a contract to be awarded by the City." (*Id.* at 12.)

Indeed, the argument for applying the forum-selection clause to TriState's claims is even stronger than in the cases cited above. At issue in those cases were forum-selection clauses that applied to "disputes arising out of" the agreement, *Omron*, 28 F.3d at 601–02, "litigation upon any of [the agreement's] terms," *Crescent Int'l*, 857 F.2d at 944, "suits or causes of action arising directly or indirectly from [the] agreement," *Bense*, 683 F.2d at 720, and "any controversy 'regarding interpretation or fulfillment' of the contract," *Manetti-Farrow*, 858 F.2d at 510. Here, the forum-selection clause applies more broadly to "any legal dispute[]."

I thus conclude that the forum-selection clause applies to both TriState's contract and tort claims.[20]

b.     *Transferring the Case to the District of Massachusetts*

Having concluded that the forum-selection clause applies to all of TriState's claims, I must now decide whether to hold the parties to their contractual choice of venue by transferring the case to the District of Massachusetts. Under section 1404(a), a district court may transfer a civil case to another district or division where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The decision to grant a motion for a change of venue lies within the broad discretion of the district court, but should not

_____

[20] TriState also contends that the forum-selection clause does not apply to its Lanham Act claim, but because I am dismissing that claim, I need not address whether the forum-selection clause applies to claims under the Lanham Act. In any event, the same reasoning applies to TriState's Lanham Act claims. *See, e.g.*, *TGI Friday's, Inc. v. Great Nw. Rests., Inc.*, 652 F. Supp. 2d 750, 759–60 (N.D. Tex. 2009) (concluding that franchise agreements' forum-selection clause applied to Lanham Act claims because the "dispute . . . require[d] interpretation and application of the agreements"); *cf. Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 724 (9th Cir. 1999) ("[W]e hold that because Simula's claims of false and misleading representation under the Lanham Act relate directly to [the agreement], they are subject to [the arbitration clause].").

be liberally granted. *See Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

Before deciding whether to transfer the case to the District of Massachusetts, I must first determine whether this action could have originally been brought in that district. *See id.* at 24 ("Prior to ordering a transfer the district court must make a determination that the suit could have been rightly started in the transferee district."). Big Belly's principal place of business is Massachusetts, and because Big Belly is therefore subject to personal jurisdiction in Massachusetts, *see* Mass. Gen. Laws ch. 223A, § 2, Big Belly is deemed to reside in the District of Massachusetts for venue purposes. *See* 28 U.S.C. § 1391(c). Accordingly, this action could have originally been brought in that district. *See* 28 U.S.C. § 1391(a)(1).

I turn now to section 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotation marks and citation omitted). In ruling on transfer motions under section 1404(a), courts should "'consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.'" *Jumara*, 55 F.3d at 879 (quoting 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction and Related Matters* § 3847 (2d ed. 1986)). The Third Circuit has enumerated several private and public interests to be considered. *See id.* at 879–80.

Private interests include (1) the plaintiff's choice of forum, (2) the defendant's forum preference, (3) whether the claim arose elsewhere, (4) the convenience of the parties as indicated by their relative physical and financial condition, (5) the convenience of the witnesses (but only

to the extent that the witnesses may actually be unavailable for trial in one of the fora), and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). *See id.* at 879.

Public interests include (1) the enforceability of the judgment, (2) practical considerations that could make the trial easy, expeditious, or inexpensive, (3) the relative administrative difficulty in the two fora resulting from court congestion, (4) the local interest in deciding local controversies at home, (5) the public policies of the fora, and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *See id.* at 879–80.

"Within this framework, a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum." *Id.* at 880. A valid forum-selection clause is entitled to "substantial consideration," although it "should not receive dispositive weight." *Id.* "Thus, while courts normally defer to a plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue," and in such a case the plaintiff "bear[s] the burden of demonstrating why [it] should not be bound by [its] contractual choice of forum." *Id.*[21]

Applying these principles here, I cannot conclude that TriState has met its burden of demonstrating that retaining venue in the Eastern District of Pennsylvania, rather than transferring the case to the District of Massachusetts, would best serve the interests of convenience and justice.

---

[21] TriState asserts that Big Belly bears the burden of establishing the propriety of the transfer. Although that would be true in the absence of an enforceable forum-selection clause, *see Shutte*, 431 F.2d at 25, because I have concluded that the forum-selection clause applies here, it is TriState that bears the burden of demonstrating why this action should not be transferred to the District of Massachusetts, *see Jumara*, 55 F.3d at 880.

TriState asserts that "[i]t would be inconvenient for TriState to litigate this case in the District of Massachusetts." (Callahan Decl. ¶ 7.) But TriState does not suggest that litigating the case in the District of Massachusetts would impose a financial hardship or otherwise disproportionately burden TriState given the relative financial condition of TriState and Big Belly. Whereas the Eastern District of Pennsylvania is clearly more convenient for TriState, since its principal place of business is West Conshohocken, Pennsylvania, the District of Massachusetts is more convenient for Big Belly, since its principal place of business is Needham, Massachusetts. But transfer—or in this case retention of venue, given that TriState bears the burden of showing why it should not be bound by the contractual choice of forum—is not appropriate if it would merely "shift the inconvenience" from one party to the other. *Residex Corp. v. Farrow*, 374 F. Supp. 715, 722 (E.D. Pa. 1974), *aff'd*, 556 F.2d 568 (3d Cir. 1977) (table), *and aff'd sub nom. Kornfeld v. Residex Corp.*, 556 F.2d 567 (3d Cir. 1977) (table).

TriState also contends that "[a]ll of the 'operative facts' of this case have occurred in this forum" (Pl.'s Mem. at 34), but in fact, events or omissions giving rise to TriState's claims occurred in both this district and the District of Massachusetts. To the extent that TriState's claims are based on its efforts to sell trash compactors to the City and on Big Belly's representations to the City as well as its ultimate sale of trash compactors to the City, it can be said that TriState's claims arose in this district. But to the extent that TriState's claims are based on Big Belly's alleged breach of contract—its failure to make a payment allegedly owed to TriState—that omission occurred in Massachusetts, Big Belly's principal place of business. *See Cottman Transmission Sys.*, 36 F.3d at 295 (explaining that the defendant's failure to remit payments occurred in Michigan, where the defendant was located, even though the payments

31

were to be sent to the plaintiff in Pennsylvania). This factor thus does not weigh in favor of TriState.

Nor do the other private-interest factors counsel in favor of maintaining venue in this district. The convenience of the witnesses are to be considered only "to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. Further, in considering the convenience of witnesses, the focus is on non-party witnesses, since "party witnesses are presumed to be willing to testify in either forum despite any inconvenience." *Hillard v. Guidant Corp.*, 76 F. Supp. 2d 566, 570 (M.D. Pa. 1999). TriState provides a list of seventeen non-party witnesses, eleven of whom work for the City and all of whom are located in this district. (*See* Callahan Decl. ¶ 5.) Although testifying in this district would certainly be more convenient for these witnesses, TriState does not contend that its witnesses would be unavailable to testify in the District of Massachusetts. Similarly, TriState has asserted that its relevant books and records are located in Pennsylvania (*see* Callahan Decl. ¶ 4), but has not suggested that those records could not be produced in the District of Massachusetts.

Finally, although this district's interest in deciding local controversies may weigh slightly in TriState's favor, neither it nor the other public-interest factors are sufficient to outweigh the parties' venue preference as expressed in the forum-selection clause. There is no reason that a judgment in the District of Massachusetts could not be enforced elsewhere or that that court could not apply the laws of Pennsylvania if necessary.[22] There is no evidence that trial would be easier or more expeditious in this district. Nor is there evidence that this district's docket is

---

[22] As discussed in section C, *supra*, the parties have not addressed whether Massachusetts law or Pennsylvania law applies to TriState's tort claims.

significantly less congested than that of the other district.

In short, TriState has not offered any specific reason why it "should not be bound by [its] contractual choice of forum." *Jumara*, 55 F.3d at 880. I will therefore grant Big Belly's motion to transfer this case to the District of Massachusetts.

## III.    CONCLUSION

Big Belly challenges TriState's assertion of both federal-question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332. I conclude that TriState has established both federal-question and diversity jurisdiction in this action, and I will therefore deny Big Belly's motion to dismiss for lack of subject-matter jurisdiction. But TriState has failed to state a claim upon which relief can be granted under the Lanham Act, and I will therefore grant what I have construed to be Big Belly's motion to dismiss that claim under Rule 12(b)(6), even though Big Belly's motion was incorrectly styled as a Rule 12(b)(1) motion.

Big Belly also argues that TriState's claims are precluded and should be dismissed because TriState failed to assert a compulsory counterclaim in the prior Massachusetts state-court action. Because that action was dismissed before TriState was required to file an answer, however, the compulsory-counterclaim rule does not apply, and I will therefore deny Big Belly's motion to dismiss the complaint on that ground.

Finally, Big Belly contends that because the distribution agreement contains a forum-selection clause designating the Commonwealth of Massachusetts as the venue for any legal disputes, this action should either be dismissed for improper venue under Rule 12(b)(3) or transferred to the District of Massachusetts under 28 U.S.C. § 1404(a). Because venue is proper in this district, I will deny Big Belly's motion to dismiss for improper venue. But because

TriState has not met its burden of demonstrating why it should not be bound by the parties' contractual choice of forum, I will grant Big Belly's motion to transfer this action to the District of Massachusetts.

An appropriate order accompanies this memorandum.