IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRISTATE HVAC EQUIPMENT, LLP, | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION NO. 10-1054 |
| BIG BELLY SOLAR, INC., | : |
| Defendant. | : |

**MEMORANDUM**

YOHN, J.                                                                                               January 20, 2011

Plaintiff TriState HVAC Equipment, LLP ("TriState") has filed a motion for reconsideration of my October 20, 2010, memorandum and order[1] insofar as I dismissed TriState's claim under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), against Big Belly Solar, Inc. ("Big Belly") and transferred this action to the District of Massachusetts, the forum specified in the parties' distribution agreement as the venue for any legal disputes. For the reasons set forth below, I will deny the motion to reconsider as to the dismissal of the Lanham Act claim but will grant the motion to reconsider as to the transfer of the action to the District of Massachusetts and deny the original motion to transfer.

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.

---

[1] __ F. Supp. 2d __, 2010 WL 4139285 (E.D. Pa. Oct. 20, 2010).

1

1985). A court may grant a motion for reconsideration if the moving party demonstrates at least one of the following grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Mere dissatisfaction with a court's ruling is not a proper basis for reconsideration, *see Progressive Cas. Ins. Co. v. PNC Bank, N.A.*, 73 F. Supp. 2d 485, 487 (E.D. Pa. 1999), and a motion for reconsideration may not be used to make arguments, or present evidence, that could have been made or presented before the court issued its order, *see Johnson v. Diamond State Port Corp.*, 50 F. App'x 554, 560 (3d Cir. 2002) (not precedential).

In its motion for reconsideration, TriState asserts two clear errors of law. TriState contends first that the dismissal of its Lanham Act claim was based on an improper interpretation of the parties' distribution agreement. TriState next contends that the decision to transfer venue to the District of Massachusetts constitutes clear error.

### Lanham Act Claim

TriState bases its Lanham Act claim on allegations that, in selling trash compactors to the City of Philadelphia (the "City"), Big Belly made false or misleading statements, telling the City that it had to purchase directly from Big Belly and did not have to put the contract out for bid to distributors. In my October 20 memorandum and order, I concluded that because Big Belly, in section 10(a) of its distribution agreement with TriState, had reserved the right not to accept any order placed by TriState, its statements to the City were neither false nor misleading.

In seeking reconsideration, TriState now contends that this interpretation of section 10(a)

2

is "inconsistent with" and renders "meaningless" section 3(c) of the agreement, in which Big Belly reserved the right to sell directly to so-called key and national accounts and agreed to provide a list of such accounts. (Pl.'s Br. in Supp. of Mot. for Partial Reconsideration ("Pl.'s Br.") at 4.) TriState argues that there would be no need for section 3(c)'s directive that Big Belly list its key and national accounts if in fact Big Belly could reject, in its sole discretion, any orders from TriState under section 10(a).[2] But, as discussed above, a motion for reconsideration may not be used to make arguments that could have been made before dismissal. And in its opposition to Big Belly's motion to dismiss, TriState did not argue that Big Belly's right of refusal was limited in any way—and, indeed, did not even respond to Big Belly's argument that it made no misrepresentations because it had the right not to accept an order placed by TriState.

In any event, TriState's argument lacks merit. Big Belly's right to reject, in its sole discretion, any order placed by TriState—regardless of whether the order is for a designated key or national account—is not inconsistent with, and does not eliminate, the separate and independent requirement that Big Belly identify the key and national accounts it intends to pursue. Section 3(c) is intended to put TriState on notice as to which accounts Big Belly intends to pursue directly and to provide a measure of compensation if TriState is involved in a sale by Big Belly to such an account. Contrary to TriState's contentions, I see no inconsistency between asserting that Big Belly had the right under section 10(a) to reject an order placed by TriState on

---

[2] As discussed below, TriState presents what it asserts is new evidence of Big Belly's misrepresentations. TriState also argues that the new evidence suggests that this interpretation of section 10(a) is inconsistent with Big Belly's own interpretation of the agreement. For reasons that will be discussed, however, this new evidence does not warrant reconsideration of the dismissal order, although, to the extent that TriState has incorporated this evidence in the draft amended complaint that it has attached to its separate motion for leave to file an amended complaint, I will consider the new evidence in connection with that motion.

3

behalf of the City (and thus made no misrepresentation to the City in violation of the Lanham Act) and acknowledging that, if TriState's allegations are true, Big Belly may nonetheless have breached its contractual obligations to TriState by not identifying the City as a key account and by failing to compensate TriState for its participation in the sale of trash compactors to the City.

TriState also asserts that it has obtained new evidence that warrants reconsideration of my dismissal order. In particular, TriState has obtained a March 2, 2009, letter from Big Belly to the City's Streets Department, in which Big Belly asserted that the agreements with its distributors did not preclude Big Belly from selling directly to any account and that the agreements with its Philadelphia-area distributors listed the City as a key account of Big Belly's. (Decl. of Anthony J. DiMarino in Supp. of Mot. for Partial Reconsideration ("DiMarino Decl.") Ex. A.) TriState has also obtained a report issued by the City Controller's Office following a review of the City's purchase of Big Belly trash compactors. The report discusses both the March 2, 2009, letter and a subsequent interview with Big Belly's CEO. According to the report, Big Belly's CEO acknowledged that the letter was incorrect, since an agreement with one of its distributors (TriState) did not list the City as a key account, but denied that the letter was a material misrepresentation, explaining that he believed that TriState was aware that Big Belly was pursuing sales to the City. (*Id.* Ex. B, at 3.) TriState contends not only that these documents provide evidence of additional misrepresentations made to the City but also that they suggest that my interpretation of the distribution agreement is inconsistent with Big Belly's own interpretation of the agreement. Noting that Big Belly's CEO did not mention section 10(a) of the distribution agreement in the interview with the City Controller's Office, TriState argues that that omission suggests that Big Belly "does not understand [section] 10(a) to provide . . . an

unconditional right to reject any orders from TriState." (Pl.'s Br. at 8.)

TriState, however, obtained this evidence in July 2010 (*see* DiMarino Decl. ¶¶ 2–3), approximately three months before I dismissed TriState's Lanham Act claim. Although TriState obtained the evidence after briefing on Big Belly's motion to dismiss had been completed, to the extent that TriState believed that this evidence could affect my ruling on Big Belly's motion to dismiss the Lanham Act claim, TriState had ample time to supplement its brief in order to incorporate this new evidence.

TriState points out that in its opposition to Big Belly's motion to dismiss, TriState requested, in a footnote, "leave to amend its [c]omplaint, if necessary" (Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss at 18 n.14), and TriState contends that it should have been permitted to amend its Lanham Act claim before that claim was dismissed. TriState asserts that "'even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile.'" (Pl.'s Br. at 15 (quoting *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)).) But in *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252–53 (3d Cir. 2007), the Third Circuit explained that "[i]n non–civil rights cases, the settled rule is that properly requesting leave to amend a complaint requires submitting a draft amended complaint." TriState did not submit a draft amended complaint before I ruled on Big Belly's motion to dismiss, even though it had ample opportunity to do so before its Lanham Act claim was dismissed, and there was thus no error in dismissing the claim on the basis of the allegations in its original complaint.

TriState contends that the failure to reconsider the dismissal order "will cause TriState to suffer a manifest injustice," arguing that "Big Belly should not be permitted to breach the

5

Distributorship Agreement, yet be shielded from the consequences of its misconduct by the same Agreement." (Pl. Br. at 9.) But TriState still has a breach-of-contract claim against Big Belly,[3] and to the extent that Big Belly did breach the agreement, as TriState contends, dismissal of the Lanham Act claim will not shield Big Belly from liability under the breach-of-contract claim.

Because the motion for reconsideration presents arguments and evidence that TriState could have presented before I dismissed its Lanham Act claim, and because TriState has not convincingly demonstrated that the failure to reconsider the dismissal of that claim as stated in the original complaint would work a manifest injustice, I will deny TriState's motion for reconsideration of my October 20 order dismissing TriState's Lanham Act claim.

TriState has now filed a separate motion seeking leave to amend its complaint and has attached a draft amended complaint in which, in addition to adding a new claim, it has repleaded its Lanham Act claim and amended it to include the new evidence. Although TriState has not met the standard for reconsideration of the dismissal of its Lanham Act claim, I will review the new evidence offered by TriState, and review the issues that TriState has raised here, in the context of its motion for leave to amend its complaint.[4]

---

[3] TriState has five remaining claims against Big Belly: breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference with a prospective contractual relation, unjust enrichment, and common-law unfair competition.

[4] I have granted Big Belly fourteen days from the date of this decision to respond to TriState's motion for leave to file an amended complaint, and I will consider that motion after the parties' briefing has been completed.

**Venue**

TriState asserts that "it would be a clear error of law for venue to be transferred to the District of Massachusetts" (Pl.'s Br. at 16), arguing that "the convenience of [its] non-party witnesses is such a significant factor that it should be dispositive in favor of venue in this district" (*id.* at 18).

In its opposition to Big Belly's motion to transfer venue, TriState provided a list of seventeen non-party witnesses, eleven of whom work for the City and all of whom are located in this district. TriState did not contend, however, that any of its witnesses would be unavailable to testify in the District of Massachusetts. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (asserting that the convenience of witnesses is to be considered only "to the extent that the witnesses may actually be unavailable for trial"). Noting that its witnesses are beyond the subpoena power of the District of Massachusetts, *see* Fed. R. Civ. P. 45(b)(2) (providing that a subpoena may be served "within the district of the issuing court" or "outside that district but within 100 miles of the place specified for the deposition, hearing, trial, production, or inspection"), TriState now contends that "'[a]ctual unavailability in this context means outside the subpoena power of the forum.'" (Pl.'s Br. at 17 (quoting *Lehr v. Stryker Corp.*, No. 09-2989, 2010 WL 3069633, at *5 n.7 (E.D. Pa. Aug. 4, 2010) (citing Charles A. Wright et al., *Federal Practice and Procedure: Jurisdiction and Related Matters* § 3851, at 420–22 (2d ed. 1986))).)

While some courts have required a showing that a witness would be unwilling to testify, according less weight to the unavailability of compulsory process where there was no suggestion that non-party witnesses would decline to appear voluntarily and thus that a subpoena would in fact be necessary, *see, e.g.*, *Brenner v. Consol. Rail Corp.*, No. 09-cv-1574, 2009 WL 2710241,

at *3 (E.D. Pa. Aug. 26, 2009); *Thayer/Patricof Educ. Funding, LLC v. Pryor Res., Inc.*, 196 F. Supp. 2d 21, 33 (D.D.C. 2002); *Mason v. Smithkline Beecham Clinical Labs.*, 146 F. Supp. 2d 1355, 1361–62 (S.D. Fla. 2001); *Citigroup, Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 562 (S.D.N.Y. 2000); *Houk v. Kimberly-Clark Corp.*, 613 F. Supp. 923, 931 (W.D. Mo. 1985), other courts, like the *Lehr* court, have accorded significant weight to the fact that non-party witnesses are beyond a court's subpoena power without expressly discussing whether such witnesses would testify voluntarily, without having to be subpoenaed, *see, e.g.*, *U-Haul Int'l, Inc. v. Hire a Helper, LLC*, No. CV-08-1271, 2008 WL 4368663, at *2–*3 (D. Ariz. Sept. 23, 2008); *Fleming v. Ford Motor Co.*, No. 05-1333, 2006 WL 566109, at *3 (D.D.C. Mar. 7, 2006).

I need not resolve this apparent conflict of authority. TriState provided a list of seventeen non-party witnesses. Eleven of these witnesses are, or at least were at the relevant time, employees of or associated with the City. Five others are employed by five separate entities located in this district, and the sixth resides here. Although TriState has not expressly asserted, either in its opposition to Big Belly's motion to transfer or in its current motion for reconsideration, that any of its witnesses would be unwilling to testify, from the information that TriState has provided, I can readily conclude that some, if not many, of these witnesses would not travel voluntarily to Massachusetts to testify. Thus, under either standard, they would be unavailable. And in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511 (1947), the Supreme Court stated that "to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants." This factor weighs heavily in favor of reconsidering and denying the motion to transfer venue. Moreover, Big Belly has not submitted the names of any potential

witnesses, even company employees, so presumably it has no non-party witnesses who would be unavailable to testify in this district.

I conclude that the unavailability in Massachusetts of seventeen non-party witnesses, whose relevant testimony is summarized by TriState, is sufficient to outweigh the parties' contractual choice of venue, all of the other relevant *Jumara* factors being substantially neutral, *see Jumara*, 55 F.3d at 879–80 (enumerating several private and public interests to be considered).[5] I will therefore grant TriState's motion for reconsideration of my October 20 order transferring this action to the District of Massachusetts and, upon reconsideration, deny Big Belly's original motion to transfer.

\* \* \*

An appropriate order accompanies this memorandum.

---

[5] TriState also contends that the balance of public-interest factors strongly favors this district, asserting that "there is a strong public interest in protecting TriState, a resident of this forum," as well as in "resolving [the] dispute with Big Belly, another forum resident" (Pl.'s Br. at 19), and that the "citizens of Philadelphia and its government have been directly impacted by" Big Belly's alleged misrepresentations and "the interests of the citizens of Philadelphia in . . . righting any wrong perpetrated against them must not be overlooked" (*id.* at 20). But, as Big Belly points out, "[t]his is not a taxpayer lawsuit brought to vindicate [the] interests" of the City or its taxpayers; rather, this is a private action in which TriState is seeking damages on its own behalf. (Def.'s Resp. and Br. in Opp'n to Pl.'s Mot. for Partial Reconsideration at 9.)