IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| TRISTATE HVAC EQUIPMENT, LLP, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 10-1054 |
| | : | |
| BIG BELLY SOLAR, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

**MEMORANDUM**

YOHN, J.                                                          December 19, 2011

Following my grant to TriState HVAC Equipment, LLP ("TriState") of leave to amend its

complaint under Federal Rule of Civil Procedure 15(a)(2), and TriState's filing of its amended

complaint, Big Belly Solar, Inc. ("Big Belly") has filed a motion under Rule 12(b)(6) to dismiss

all but one of the seven counts in TriState's amended complaint. For the reasons that follow, I

will grant in part and deny in part Big Belly's motion.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises from a distribution agreement between TriState, a Pennsylvania limited

liability partnership with a principal place of business in West Conshohocken, Pennsylvania, and

Big Belly, a Delaware corporation with a principal place of business in Needham,

Massachusetts.[1] (Am. Compl. ¶¶ 1–2.) Big Belly appointed TriState as a nonexclusive distributor

---

[1] The following summary is based on the allegations in TriState's amended complaint,
which I assume to be true for the purposes of Big Belly's motion to dismiss, *see Ashcroft v.*

of its solar-powered trash-compactor products[2] in the territory covering Pennsylvania, New

Jersey, and Delaware, but, under the distribution agreement, reserved the right to sell directly to

so-called key and national accounts, a list of which was to be provided by the company.[3] (Am.

Compl. ¶¶ 7–12; Distribution Agreement § 3(a), (c).) Big Belly recognized that its sales to these

key and national accounts might require participation by its local distributors, and the distribution

agreement provided that distributors such as TriState would be entitled to 25 percent of their

normal margin if Big Belly involved the distributor in a sale to one of these accounts. (Am.

Compl. ¶ 11; Distribution Agreement § 3(c), Sch. A.)

TriState asserts that Big Belly never provided a list of key or national accounts. (Am.

Compl. ¶ 13.) TriState claims that on February 1, 2008, it sent Big Belly a list of its sales targets,

which included the City of Philadelphia (the "City"), and that on February 26, 2008, Rick

Gaudette, then Big Belly's vice president of sales, confirmed that Big Belly would not be

pursuing the City as one of its own accounts. (*Id.* ¶¶ 14–15, 18.) Thereafter, TriState began its

marketing effort to sell Big Belly trash compactors to the City, contacting the City's Streets

---

*Iqbal*, 129 S. Ct. 1937, 1950 (2009), as well as the parties' distribution agreement, which Big Belly attached to its motion to dismiss TriState's original complaint, *see Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (asserting that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").

[2] As TriState explains in its complaint, these are garbage bins equipped with a 40-watt solar panel that powers a battery-operated trash compactor, which increases the bin's capacity at least fourfold. An indicator light on the garbage bin lights up when the bin is full, and a wireless device can be installed to inform a remote monitor that the bin needs to be emptied. (Am. Compl. ¶¶ 5, 68.)

[3] Key accounts were defined as accounts located within a given territory, and national accounts were defined as those that spanned multiple territories. (Am. Compl. ¶ 9.)

Department, the "Green Plan of Philadelphia," and individuals in the administration of Michael Nutter, the City's mayor. (*Id.* ¶¶ 19–22.) TriState asserts that it placed Big Belly trash compactors at the University of Pennsylvania and Drexel University, and that individuals from those schools "actively discuss[ed] the Big Belly trash cans with the City on behalf of TriState." (*Id.* ¶¶ 25–26.) TriState claims that on May 7, 2008, Gaudette again confirmed that the City was a TriState account and that Big Belly would not be pursuing the City—according to TriState, Gaudette said, "We continue to support your efforts to win Philly." (*Id.* ¶ 23.)

In September 2008, sometime after Gaudette left Big Belly, TriState updated William M. Eddy, Big Belly's director of sales, on its sales efforts, including its efforts to sell Big Belly trash compactors to the City. (*Id.* ¶¶ 27–29.) According to TriState, Eddy neither identified the City as a key account of Big Belly's nor instructed TriState not to market to the City. (*Id.* ¶ 30.)

In February or March 2009, Jack Kutner, a vice president at Big Belly, told TriState that Big Belly was in direct discussions with the City's Streets Department regarding the sale of Big Belly products. (*Id.* ¶¶ 32–33.) TriState sent an e-mail to Eddy to confirm that the City was one of TriState's accounts, but Eddy never acknowledged that the City was in fact a TriState account. (*Id.* ¶¶ 37–38.)

On April 16, 2009, TriState sent an e-mail to several individuals in the office of Mayor Nutter identifying TriState as a distributor for Big Belly products and describing the efforts the company had been making to sell Big Belly trash compactors to the City. (*Id.* ¶ 39.) An executive assistant in the Office of Sustainability responded to TriState's e-mail, advising the company that its proposal had been forwarded to the City's director of strategic initiatives. (*Id.* ¶ 41.) TriState was unable to contact the director of strategic initiatives, and the director never contacted

TriState. (*Id.* ¶¶ 42–43.) TriState monitored the City's website, but the City never issued a request for proposal ("RFP") for Big Belly trash compactors. (*Id.* ¶ 44.) TriState later learned that Mayor Nutter would be holding a press conference on April 30, 2009, to announce the City's purchase of 500 Big Belly trash compactors for Center City. (*Id.* ¶ 45.)

On April 30, 2009, the same day as the scheduled press conference, TriState met with Eddy and Kutner at TriState's facility in West Conshohocken. (*Id.* ¶ 46.) When asked about the City, Kutner allegedly said that Big Belly had entered into a contract for the sale of its trash compactors to the City, explaining that Big Belly "sole-sourced" the contract. (*Id.* ¶¶ 48–50.) According to TriState, Kutner said that Big Belly had informed the City that it had to buy directly from Big Belly and that the City did not have to put the contract out for bid to distributors. (*Id.* ¶ 51.) TriState then asked to be compensated for its sales efforts with the City, as provided for in the distribution agreement, but Kutner refused to compensate TriState, even though Big Belly was allegedly aware "of the considerable efforts made by TriState." (*Id.* ¶¶ 55–57.)

In May, TriState met with various individuals from the City, including members of the Streets Department, the Procurement Office, and the Controller's Office. (*Id.* ¶¶ 59–65.) During a meeting with the Streets Department, TriState was informed that Eddy had told the City not to put the contract for Big Belly trash compactors out for bid. Eddy allegedly said that the City could purchase trash compactors with a wireless configuration only from Big Belly, that Big Belly could offer the City the best price, and that the City did not need to purchase the trash compactors through a Big Belly distributor. (*Id.* ¶ 61.)

TriState filed this action against Big Belly on March 10, 2010, alleging six counts. TriState alleged that Big Belly breached the distribution agreement by failing to identify the City

as a key account and by failing to compensate TriState for its participation in the sale of Big

Belly trash compactors to the City, as required by the agreement (count I). TriState claimed that it

spent a significant amount of time and resources educating City officials about the benefits of

Big Belly trash compactors and that these marketing efforts contributed to Big Belly's contract

with the City and thus conferred a substantial benefit on Big Belly. By failing to compensate

TriState for its marketing efforts, TriState alleged, Big Belly was unjustly enriched and profited

at TriState's expense (count VI). TriState further alleged that by instructing the City not to put

the Big Belly trash-compactor contract out for bid and by making false or misleading statements

to the City—namely, that the City could purchase Big Belly trash compactors with a wireless

configuration only from Big Belly—Big Belly breached the implied covenant of good faith and

fair dealing in the distribution agreement (count II), tortiously interfered with TriState's

prospective contractual relationship with the City (count III), and engaged in unfair competition

under both the Lanham Act and the common law (counts IV and V).

In a memorandum and order dated October 20, 2010, I dismissed TriState's Lanham Act

claim. *See TriState HVAC Equip., LLP v. Big Belly Solar, Inc.*, 752 F. Supp. 2d 517 (E.D. Pa.

2010). TriState timely filed a motion for reconsideration of the dismissal of its claim and a

motion for leave to amend its complaint to include new allegations and to replead its Lanham Act

claim as well as to add a new claim alleging unfair competition or unfair or deceptive acts or

practices in violation of Massachusetts's consumer-protection statute, Mass. Gen. Laws Ann. ch.

93A, § 2. Because TriState did not meet the standard for reconsideration of the dismissal of its

claim, I denied its motion for reconsideration. See *TriState HVAC Equip., LLP v. Big Belly Solar,

Inc.*, No. 10-1054, 2011 WL 204738 (E.D. Pa. Jan. 20, 2011). But I granted TriState's motion for

leave to amend its complaint. See *TriState HVAC Equip., LLP v. Big Belly Solar, Inc.*, No. 10-1054, 2011 WL 3047784 (E.D. Pa. July 21, 2011). TriState promptly filed its amended complaint, asserting claims under the Lanham Act (count IV) and the Massachusetts statute (count VII), as well as the five common-law claims from its original complaint. Big Belly now seeks to dismiss all the claims against it except the breach-of-contract claim.

## II.    STANDARD OF REVIEW

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual allegations "that are 'merely consistent with' a defendant's liability," or that permit the court to infer no more than "the mere possibility of misconduct" are not enough. *Id.* at 1949–50 (quoting *Twombly*, 550 U.S. at 557). Rather, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. When a court evaluates a motion to dismiss, "the factual and legal elements of a claim should be separated." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210–11; *see also Iqbal*, 129 S. Ct. at 1950 (asserting that a court should assume the veracity of well-pleaded factual allegations, but legal conclusions "are not entitled to the assumption of truth"). And the court must draw all reasonable inferences in favor of the plaintiff. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009).

6

### III.    DISCUSSION

Big Belly seeks to dismiss counts II–VII of TriState's amended complaint, in which TriState alleges breach of the implied covenant of good faith and fair dealing; tortious interference with a prospective contractual relation; unjust enrichment; unfair competition under both section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and the common law; and unfair competition or unfair or deceptive acts or practices in violation of Massachusetts's consumer-protection statute, Mass. Gen. Laws Ann. ch. 93A, § 2.

Before turning to Big Belly's arguments and the merits of TriState's claims, I must first address the question of which state's laws apply. As I noted in a prior opinion, the distribution agreement contains a choice-of-law clause that provides that the agreement "shall be subject to the laws of the Commonwealth of Massachusetts and [Big Belly] and Distributor consent to be bound by the provisions of such laws." (Distribution Agreement § 22.) And as I further asserted, because there is nothing to suggest that either of the exceptions to Pennsylvania's general rule of enforcing a contractual choice-of-law provision applies here, this choice-of-law provision should be given effect.[4] *See TriState HVAC Equip.*, 752 F. Supp. 2d at 530. Massachusetts law therefore governs TriState's breach-of-contract claim. And Massachusetts law similarly governs TriState's claim for breach of the implied covenant of good faith and fair dealing, since the claim alleges a

---

[4] A federal court exercising diversity jurisdiction must apply the choice-of-law rules of the forum state, in this case, Pennsylvania. *See Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 497 (1941)). Pennsylvania courts generally honor the intent of contracting parties and enforce contractual choice-of-law provisions unless either "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice" or "(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue." *Kruzits*, 40 F.3d at 55 (quoting Restatement (Second) of Conflicts § 187).

breach of duty implied in the agreement. But the parties have not fully briefed the question whether the choice-of-law provision also applies to TriState's other claims.

With respect to TriState's two common-law tort claims, both parties have assumed, without citing any authority or providing any analysis, that Pennsylvania law applies. Because both parties have cited Pennsylvania law, I will do so here, for purposes of Big Belly's motion to dismiss. But I will give the parties the opportunity to further address the choice-of-law issue should it later become an issue.

With respect to its unjust-enrichment claim, TriState asserts, without citing any authority, that the choice-of-law provision applies and therefore that Massachusetts law governs. Big Belly, on the other hand, does not address the issue but cites Pennsylvania law in arguing that TriState's unjust-enrichment claim should be dismissed. Because there does not appear to be any conflict between Massachusetts law and Pennsylvania law, I need not decide which law governs TriState's unjust-enrichment claim. *See Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007) (asserting that under Pennsylvania's choice-of-law rules, "[i]f two jurisdictions' laws are the same, . . . a choice of law analysis is unnecessary").

### A.      Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II)

Under Massachusetts law, "[t]he covenant of good faith and fair dealing is implied in every contract." *Uno Rests., Inc. v. Boston Kenmore Realty Corp.*, 805 N.E.2d 957, 964 (Mass. 2004). The Massachusetts Supreme Court has explained that "[t]he purpose of the implied covenant is to ensure that neither party interferes with the ability of the other to enjoy the fruits of the contract and that, when performing the obligations of the contract, the parties remain faithful

to the intended and agreed expectations of the contract." *Chokel v. Genzyme Corp.*, 867 N.E.2d 325, 329 (Mass. 2007) (internal quotation marks and citations omitted).

TriState alleges that Big Belly breached the implied covenant of good faith and fair dealing by, among other things, "advising the City that Big Belly was the only source from which the City could obtain Big Belly trash cans" and "instructing the City not to put the Big Belly trash can contract out for bid." (Am. Compl. ¶¶ 100–101.)

In seeking dismissal of this claim, Big Belly argues that breach of the implied covenant of good faith and fair dealing is not an independent cause of action and that such a claim cannot be maintained separately from TriState's breach-of-contract claim. But Big Belly cites no authority requiring dismissal of this claim under Massachusetts law, and I am not aware of any such authority.[5] Indeed, neither of the two cases cited by Big Belly precludes a plaintiff from asserting separate claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

In *Uno Restaurants,* the Massachusetts Supreme Judicial Court considered whether the trial court had erred in denying the defendant's motion for a directed verdict as to the claim against it for breach of the implied covenant of good faith and fair dealing. The plaintiff in that case had a right of first refusal to purchase the unit that it leased in the defendant's building.

_____

[5] Big Belly did not address whether the choice-of-law provision in the distribution agreement applies to TriState's claim for breach of the implied covenant of good faith and fair dealing and cited both Pennsylvania and Massachusetts law in arguing that this claim should be dismissed. I have already concluded, as discussed above, that the contractual choice-of-law provision, and thus Massachusetts law, applies to this claim. But I also note that to the extent that Big Belly argues that breach of the implied covenant of good faith and fair dealing is not recognized as an independent claim that is separate from a claim for breach of contract, it would not make sense to apply Pennsylvania law here given that Massachusetts law applies to the breach-of-contract claim.

9

After the defendant received an offer for the purchase of the building, with the purchase price allocated by the potential buyer between plaintiff's unit and the rest of the building, the defendant notified the plaintiff in accordance with the plaintiff's right of first refusal. But the plaintiff claimed that the allocation of the purchase price to its unit was inflated and was not consistent with the relative valuations of its unit and the rest of the building, and that this inflated allocation effectively deprived it of its right of first refusal. The plaintiff alleged both breach of contract (breach of its right of first refusal) and breach of the implied covenant of good faith and fair dealing. The Supreme Judicial Court found no evidence to support the plaintiff's contention that the buyer's offer for the plaintiff's unit was not bona fide. And, explaining that "the covenant of good faith and fair dealing does not serve to impute greater rights or impose impractical duties not contemplated in the contractual relationship," the court concluded that the covenant did not impose upon the defendant a duty to "police potential third-party offers to ensure a particular allocation that would be considered satisfactory to [the plaintiff, as] the holder of the right of first refusal." 805 N.E.2d at 966. The court asserted that "[t]he purpose of the covenant of good faith and fair dealing is not to supply contractual terms that the parties are free to negotiate," and that if the plaintiff had wanted some "warranty regarding the price at which it could purchase [the] unit[,] . . . it could have bargained for it." *Id.* Concluding that the plaintiff had thus failed to make out a claim for breach of the implied covenant of good faith and fair dealing, the court held that the trial court should have granted the defendant's motion for a directed verdict. But, notably, the court did not suggest that the plaintiff could not assert separate claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

Similarly, in *Linkage Corp. v. Trustees of Boston Univ.*, 679 N.E.2d 191 (Mass. 1997),

the other case on which Big Belly relies, the plaintiff asserted claims of breach of contract and breach of the implied covenant of good faith and fair dealing. The Supreme Judicial Court concluded that the jury's finding that the defendant had violated the covenant of good faith and fair dealing was supported by the evidence, but that the damages awarded were duplicative of the breach-of-contract damages awarded and thus could not be recovered. *See id.* at 205. But prohibiting a duplicative award of damages under two different causes of action is a far cry from holding that a plaintiff cannot assert a separate claim for breach of the implied covenant of good faith and fair dealing. Indeed, in *Linkage* both claims were submitted to the jury, and the court found no fault with that.

Because I am aware of no authority that precludes TriState from asserting a separate claim for breach of the implied covenant of good faith and fair dealing here, I will deny Big Belly's motion to dismiss this claim.

### B.    Tortious Interference with Prospective Contractual Relations (Count III)

TriState alleges that by instructing the City not to put the Big Belly trash-compactor contract out for bid and by making false or misleading statements to the City—namely, that the City could purchase Big Belly trash compactors with a wireless configuration only from Big Belly—Big Belly tortiously interfered with TriState's prospective contractual relationship with the City.

To sustain a claim of tortious interference with prospective contractual relations under Pennsylvania law, a plaintiff must demonstrate (1) "a prospective contractual relation"; (2) the "purpose or intent," on the part of the defendant, "to harm the plaintiff by preventing the relation

11

from occurring"; (3) "the absence of privilege or justification on the part of the defendant"; and (4) "the occasioning of actual damage resulting from the defendant's conduct." *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 184 (3d Cir. 1997).

Big Belly argues that TriState's tortious-interference claim must be dismissed because TriState has not sufficiently alleged a "prospective contractual relation." I disagree.

"A prospective contractual relation 'is something less than a contractual right, something more than a mere hope.'" *Santana Prods. Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 140 (3d Cir. 2005) (quoting *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 471 (1979)). "In determining whether there is a prospective contractual relationship in a tortious interference case, Pennsylvania courts have considered whether the evidence supports a finding that there was an objectively 'reasonable likelihood or probability' that the contemplated contract would have materialized absent the defendant's interference." *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 213 (3d Cir. 2009).

Here, TriState has sufficiently alleged a prospective contract with the City to state a claim for tortious interference with prospective contractual relations. TriState alleges that it made "considerable efforts" to sell Big Belly trash compactors to the City. (Am. Compl. ¶ 57.) TriState further alleges that it placed Big Belly trash compactors at the University of Pennsylvania and Drexel University, and that individuals from those schools "actively discuss[ed] the Big Belly trash cans with the City on behalf of TriState." (*Id.* ¶¶ 25–26.) The City ultimately entered into a contract with Big Belly for the purchase of 500 trash compactors, and TriState alleges that it could have provided those trash compactors, with a wireless configuration (as the City desired), at a lower cost because TriState has its own wireless network. (*Id.* ¶¶ 67–70.)

12

Big Belly argues, however, that "TriState could not have performed any contract with the City" for two reasons. (Def.'s Mem. of Law in Supp. of Def.'s Mot. to Dismiss Counts II, III, IV, V, VI, and VII of Pl.'s 1st Am. Compl. ("Def.'s Br.") at 10.)

First, Big Belly contends that it reserved the right, under section 10(a) of the distribution agreement, not to accept any order placed by a distributor and thus could have refused, in its sole discretion, to accept TriState's order if the City had sought to purchase trash compactors from TriState rather than directly from Big Belly.[6] But I rejected a similar argument in my prior opinion granting TriState's motion to amend its complaint and replead its Lanham Act claim.[7] I concluded that a question of fact exists as to the proper interpretation of this provision in the distribution agreement.[8] *See TriState HVAC Equip.*, 2011 WL 3047784, at *3–4.

Second, Big Belly argues that section 8(d) of the distribution agreement, which prohibits a distributor from "repack[ing] or relabel[ing] any Product or remov[ing] any trademarks, trade

---

[6] Section 10(a) provides: "Distributor may submit purchase orders by telephone, electronic mail, web, or fax, provided that all oral purchase orders will be confirmed in writing. All orders are subject to acceptance by [Big Belly] in [its] sole exercise of its discretion, and no order shall be binding on [Big Belly] until accepted." (Distribution Agreement § 10(a).)

[7] TriState bases its Lanham Act claim on allegations that, in selling trash compactors to the City, Big Belly made false or misleading statements, telling the City, for example, that it had to purchase directly from Big Belly and did not have to put the contract out for bid to distributors. Big Belly has argued that because it reserved the right, in section 10(a) of the distribution agreement, not to accept any order placed by a distributor, its statements to the City were neither false nor misleading.

[8] As discussed above, the distribution agreement is governed by Massachusetts law. Under Massachusetts law, "[t]he interpretation of an unambiguous contract is a question of law for the court, as is the initial determination of whether an ambiguity exists." *Bukuras v. Mueller Group, LLC*, 592 F.3d 255, 261 (1st Cir. 2010). But where the contract "has terms that are ambiguous, uncertain, or equivocal in meaning, the intent of the parties is a question of fact to be determined at trial." *Seaco Ins. Co. v. Barbosa*, 761 N.E.2d 946, 951 (Mass. 2002).

names, copyright notices, or other indicia of [Big Belly's] intellectual property rights from any

Product, any packaging, or any documentation relating to any Product" without Big Belly's

permission, precluded TriState from equipping the trash compactors with a wireless device other

than that provided by Big Belly.[9] But I cannot conclude that this provision unambiguously

precluded TriState from equipping Big Belly's trash cans with TriState's own wireless devices.

Indeed, TriState alleges in its amended complaint that "Big Belly knew that TriState had the

capability to equip the Big Belly trash cans with TriState's own wireless devices" (Am. Comp.

¶ 71) and that Big Belly's engineering department "sen[t] the wiring diagram of the Big Belly

trash can motherboard to TriState so the TriState controller (which is part of TriState's wireless

network) could pick up the signal from the Big Belly trash can motherboard" (*id.* ¶ 72).

I thus conclude that TriState's allegations regarding a prospective contract with the City

are sufficient to survive Big Belly's contentions in its motion to dismiss. Although to prevail on

its claim TriState must ultimately establish that it is reasonably probable that the City would have

entered into a contract with TriState, rather than Big Belly, but for Big Belly's alleged

interference, determining whether TriState has established such a reasonable probability requires

a factual analysis that is not appropriate at the motion-to-dismiss stage, when the factual record

---

[9] Section 8(d) provides:
Distributor shall not repackage or relabel any Product or remove any trademarks, trade names, copyright notices, or other indicia of [Big Belly's] intellectual property rights from any Product, any packaging, or any documentation relating to any Product, except as expressly approved by [Big Belly] in writing. Notwithstanding the preceding sentence, Distributor may add a label to the Product package identifying Distributor as the source of the Product within the Territory.
(Distribution Agreement § 8(d).)

has not yet been developed. Accordingly, I will deny Big Belly's motion to dismiss this claim.[10]

## C.     The Lanham Act and Common-Law Unfair Competition (Counts IV and V)

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), creates a cause of action for false

or misleading statements concerning one's own, or another's, product or commercial activities.

_____

[10] Citing substantive due-process cases brought under 42 U.S.C. § 1983, *see Indep. Enters. Inc. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165 (3d Cir. 1997); *Ray Angelini, Inc. v. City of Philadelphia*, 984 F. Supp. 873 (E.D. Pa. 1997); *ARA Servs., Inc. v. Sch. Dist.*, 590 F. Supp. 622 (E.D. Pa. 1984); *J. P. Mascaro & Sons, Inc. v. Township of Bristol*, 497 F. Supp. 625 (E.D. Pa. 1980), Big Belly contends that because TriState has no property interest in a public contract, TriState cannot demonstrate a prospective contractual relationship with the City. There is no merit to Big Belly's argument, however. The fact that TriState does not have a protected property interest in a potential contract with the City for substantive due-process purposes has absolutely no bearing on the question whether TriState can demonstrate a prospective contract for purposes of its tortious-interference claim.

Nor is there any merit to Big Belly's argument that because a "disappointed bidder" lacks standing to challenge a municipality's failure to comply with requirements that public contracts be awarded to the lowest responsible bidder, *see, e.g.*, *Indep. Enters.*, 103 F.2d at 1178, TriState has no private cause of action against Big Belly. A private cause of action for tortious interference has long been recognized in Pennsylvania, *see Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466 (Pa. 1979), and the question whether TriState has standing to sue the City for allegedly failing to comply with any applicable procurement or bidding rules has no bearing on the question whether TriState can state a claim against Big Belly for tortious interference with prospective contractual relations.

Big Belly's reliance on *Northland Equities, Inc. v. Gateway Ctr. Corp.*, 441 F. Supp. 259, 264–65 (E.D. Pa. 1977), in which the court found that a losing bidder had failed to state a common-law claim for lost profits against a winning bidder because the claim was based on "pure speculation," is similarly misplaced. The plaintiff in that case did not allege that the defendant had tortiously interfered with plaintiff's prospective contractual relations, and the court did not consider such a cause of action. Indeed, to the extent that the court held that an unsuccessful bidder is *per se* precluded from recovering "the profit he would have made out of the contract, because he had no contract," *id.* at 264, the court's holding is seemingly inconsistent with Pennsylvania case law regarding a tortious-interference claim. And to the extent that the court rejected the claim because it was "not certain that, had [the defendant's] bid been rejected, the award would have been made to [the] plaintiff," *id.*, I note that Pennsylvania courts have made it clear that to prevail on a tortious-interference claim, a plaintiff must demonstrate only "a reasonable likelihood that the [contractual] relationship would have occurred but for the defendant's interference." *Acumed*, 561 F.3d at 212.

That section provides, in relevant part, that

> [a]ny person who, . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

TriState alleges that in selling trash compactors to the City, Big Belly made false or misleading statements, telling the City, for example, that it had to purchase directly from Big Belly and did not have to put the contract out for bid to distributors.

To establish a claim under this provision of the Lanham Act, a plaintiff must prove (1) that the defendant has made false or misleading statements as to his own product or another's; (2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the advertised goods traveled in interstate commerce; and (5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, or the like. *See Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011).

Big Belly argues that TriState's Lanham Act claim must be dismissed because the misrepresentations that TriState alleges were not made in "commercial advertising or promotion," and thus are not within the scope of the Lanham Act and because, in any event, TriState cannot show actual damages.

As a preliminary matter, I note that in granting TriState's motion to amend its complaint to replead its Lanham Act claim, I concluded that TriState's proposed amendment would not be futile—that is, that TriState's claim could survive a motion to dismiss under Rule 12(b)(6). *See*

16

*TriState HVAC Equip.*, 2011 WL 3047784, at *2. Nonetheless, because Big Belly makes arguments here that it did not make in opposing TriState's motion to amend its complaint, I will address Big Belly's new arguments.[11] I still conclude, however, that TriState's allegations are sufficient to state a claim under the Lanham Act.

Big Belly argues first that its statements to the City were not made in "commercial advertising or promotion" within the meaning of the Lanham Act, asserting that TriState's amended complaint "does not refer to any type of traditional form of advertising" and that "the most that can be said is that Big Belly made one or two oral statements to City representatives and sent a single letter to the Streets Department." (Def.'s Br. at 15.)

The statute does not define "commercial advertising or promotion," and the Third Circuit has not yet addressed the meaning of the phrase. Most courts, however, have adopted the four-part test set forth in *Gordon & Breach Science Publishers S.A. v. American Institute of Physics*, 859 F. Supp. 1521, 1535–36 (S.D.N.Y. 1994), to determine whether representations constitute "commercial advertising or promotion" under the act. Under that test, to fall within the scope of the act the representations must be (1) "commercial speech"; (2) "by a defendant who is in commercial competition with plaintiff"; (3) "for the purpose of influencing consumers to buy defendant's goods or services"; and (4) "disseminated sufficiently to the relevant purchasing public," although "representations less formal than those made as part of a classic advertising campaign may suffice." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 56

---

[11] In its motion to dismiss TriState's original complaint, Big Belly argued that the statements it allegedly made to the City were not made in either "advertising" or "promotion" within the meaning of the Lanham Act, although Big Belly did not cite any case law and did not clearly articulate the basis for its contention. Big Belly did not renew that argument in opposing TriState's motion to amend its complaint to replead its Lanham Act claim.

17

(2d Cir. 2002) (internal quotation marks omitted) (discussing the *Gordon & Breach* test);[12] *see also Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1273–74 (10th Cir. 2000) (adopting test); *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999) (same); *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1384 (5th Cir. 1996) (same).

In seeking dismissal of TriState's claim, Big Belly does not challenge TriState's ability to establish the first three elements of the *Gordon & Breach* test. The only issue here is whether the statements were "sufficiently disseminated."

Courts have generally distinguished between "advertising" and "promotion"— "[a]lthough advertising is generally understood to consist of widespread communication through print or broadcast media, 'promotion' may take other forms of publicity used in the relevant industry, such as displays at trade shows and sales presentations to buyers." *Fashion Boutique*, 314 F.3d at 57. "Rather than focusing on widespread impersonal activity, the inquiry focuses on the 'relevant industry' and whether the communication was sufficiently disseminated in that context." *Gonzalez v. Allstate Ins. Co.*, No. 04-1548, 2005 WL 5891935, at *7 (C.D. Cal. Aug. 2, 2005) (discussing the "teaching of" *Coastal Abstract*, 173 F.3d 725, in which the Ninth Circuit "concluded that even though the statements had been made directly to only one potential customer, there was sufficient dissemination to constitute promotion"). Thus, "[w]here the

---

[12] In adopting the *Gordon & Breach* test, the Second Circuit adopted only the first, third, and fourth elements. *See Fashion Boutique*, 314 F.3d at 58. That court "express[ed] no view on [the] soundness" of the second element of the test—namely, the requirement that the representation be made "by a defendant who is in commercial competition with plaintiff," *id.* at 56—asserting that it did not need to address the issue to decide the appeal before it and noting only that "the requirement is not set forth in the text of section 43(a)." *Id.* at 58. I need not decide here whether the "competition" requirement should be excluded from the test, since Big Belly does not base its challenge on a contention that it was not in commercial competition with TriState.

potential purchasers in the market are relatively limited in number, even a single promotional

presentation to an individual purchaser may be enough to trigger the protections of the Act."

*Seven-Up*, 86 F.3d at 1386 (concluding that a presentation made to eleven out of seventy-four

bottlers constituted "promotion").

      Here, there are no allegations in TriState's amended complaint regarding the size of the

relevant market or the number of accounts Big Belly was targeting. And in the absence of such

information, I am not prepared at the motion-to-dismiss stage to conclude that Big Belly's

statements to the City could not constitute "promotion" under the Lanham Act.

      Big Belly next argues that TriState's Lanham Act claim must be dismissed because

"TriState cannot satisfy the necessary element of actual damages." (Def.'s Br. at 17.) As

discussed above, to maintain a claim under section 43(a) of the Lanham Act, a plaintiff must

demonstrate, among other things, a likelihood of injury in terms of declining sales, loss of

goodwill, or the like. See *Pernod Ricard*, 653 F.3d at 248. Big Belly contends that "TriState

cannot show, under any plausible and non-speculative scenario, (a) that the City of Philadelphia

would have invited TriState to submit a bid for the supply of the trash cans ultimately supplied

by Big Belly to the City, (b) that TriState would have been the lowest bidder on any such

invitation to bid, (c) that the City would have awarded the subject contract to TriState, and

(d) that TriState would have been able to perform any such contract." (Def.'s Br. at 17–18.)

      This is similar to the argument that Big Belly made in contending that TriState's tortious-

interference claim must be dismissed because TriState has not sufficiently alleged a prospective

contractual relation. But, as I asserted in my discussion of that claim, TriState has sufficiently

alleged a prospective contract with the City to state a claim for tortious-interference. And I

similarly conclude that TriState has sufficiently alleged a likelihood of injury to state a claim

under section 43(a) of the Lanham Act.

I will thus deny Big Belly's motion to dismiss TriState's Lanham Act claim.

In a footnote, Big Belly asserts that the elements of a cause of action for unfair

competition under Pennsylvania common law are identical to those for a claim under section

43(a) of the Lanham Act, except that the goods need not have traveled in interstate commerce,

and argues that TriState's common-law unfair-competition claim must fail for the same reasons

that its Lanham Act claim fails.[13] (Def.'s Br. at 12 n.3.) Because I found Big Belly's arguments

for dismissing TriState's Lanham Act claim unconvincing at this stage of the proceedings, and

because Big Belly offers no further argument as to why TriState's unfair-competition claim must

fail, I will deny its motion to dismiss the common-law unfair-competition claim.

---

[13] Relying largely on the Restatement (Third) of Unfair Competition, TriState asserts that its unfair-competition claim is "broader in scope" than its claim under the Lanham Act. (Pl.'s Br. in Supp. of Its Resp. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Br.") at 22.) The Restatement explains that "[a]s a general matter, if the means of competition are otherwise tortious with respect to the injured party, they will also ordinarily constitute an unfair method of competition." Restatement (Third) of Unfair Competition § 1 cmt. g (1995). The Restatement also suggests that liability may result from other business practices that, while not unlawful, have been determined to be unfair, although the Restatement recognizes that "[a]n act or practice is likely to be judged unfair only if it substantially interferes with the ability of others to compete on the merits of their products or otherwise conflicts with accepted principles of public policy recognized by statute or common law." *Id.* Although the Pennsylvania Supreme Court has not yet adopted section 1 of the Restatement, several district courts and Pennsylvania state trial courts have applied it. *See, e.g.*, *Bldg. Materials Corp. of Am. v. Rotter*, 535 F. Supp. 2d 518, 526 n.4 (E.D. Pa. 2008) (collecting cases). In any event, I need not determine the scope of a claim for unfair competition under Pennsylvania law here—because the parties seemingly agree that liability under the Lanham Act may potentially serve as the basis for a claim for unfair competition, and because Big Belly has offered no argument for dismissing TriState's unfair-competition claim beyond its arguments for dismissing TriState's Lanham Act claim, I will deny Big Belly's motion to dismiss TriState's common-law unfair-competition claim.

### D.      Unjust Enrichment (Count VI)

The doctrine of unjust enrichment is based on the principle that "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." Restatement (First) of Restitution § 1 (1937). A claim based on unjust enrichment is often described as one based on "quasi-contract" or a "contract implied in law." "A quasi-contract is not a contract but a duty imposed by law upon a person who has obtained property or services under circumstances where reason, common sense and justice dictate that payment should be made therefor." *Garofolo, Curtiss, Lambert & MacLean, Inc. v. Dep't of Revenue*, 648 A.2d 1329, 1334 (Pa. Commw. Ct. 1994)."Where unjust enrichment is found, the law implies a quasi-contract which requires the defendant to pay to plaintiff the value of the benefit conferred." *Northeast Fence & Iron Works, Inc. v. Murphy Quigley Co.*, 933 A.2d 664, 669 (Pa. Super. Ct. 2007) (internal quotation marks omitted).

Here, TriState claims that it spent a significant amount of time and resources educating City officials about the benefits of Big Belly trash compactors and that these marketing efforts contributed to Big Belly's contract with the City and thus conferred a substantial benefit on Big Belly. By failing to compensate TriState for its marketing efforts, TriState alleges, Big Belly was unjustly enriched and profited at TriState's expense. Big Belly, however, argues that TriState's unjust-enrichment claim must be dismissed because the distribution agreement governs the parties' relationship.

Under both Massachusetts and Pennsylvania law, where, as here, a valid and enforceable contract exists, a claim for unjust enrichment is generally precluded. *See Okmyansky v. Herbalife Int'l of Am., Inc.*, 415 F.3d 154, 162 (1st Cir. 2005) (citing *Zarum v. Brass Mill Materials Corp.*,

134 N.E.2d 141, 143 (Mass. 1956)); *Benefit Trust Life Ins. Co. v. Union Nat'l Bank of Pittsburgh*, 776 F.2d 1174, 1177 (3d Cir. 1985) ("The Supreme Court of Pennsylvania has concluded that 'the quasi-contractual doctrine of unjust enrichment [is] inapplicable when the relationship between parties is founded on a written agreement or express contract.'" (quoting *Schott v. Westinghouse Electric Corp.*, 259 A.2d 443, 448 (Pa. 1969))). This is because "[t]he law will not imply a contract where there is an existing express contract covering the same subject matter." *Zarum v. Brass Mill Materials Corp.*, 134 N.E.2d 141, 143 (Mass. 1956).

Thus, to the extent that TriState seeks to override the terms of the distribution agreement and to have this court imply a contract under the doctrine of unjust enrichment, I will dismiss such a claim. Citing Rule 8(d), TriState contends that it is entitled to plead both its breach-of-contract claim and an unjust-enrichment claim in the alternative. I disagree. TriState is correct that Rule 8(d) allows a plaintiff to plead alternative theories of relief, even if these theories are inconsistent. *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). But, as I have asserted before, "the fact that the federal rules permit alternative pleading does not mean that alternatively plead claims may not be dismissed if they fail to state a claim." *Synesiou v. DesignToMarket, Inc.*, No. 01-5358, 2002 WL 501494, at *4 (E.D. Pa. Apr. 3, 2002). Because the parties agree that a valid and enforceable contract exists here, to the extent that TriState seeks to have this court imply a contract under the doctrine of unjust enrichment, TriState's claim must be dismissed.

As TriState points out, however, even where an enforceable contract exists, under certain circumstances courts will allow restitution as an alternative remedy for a breach of the contract,

to prevent unjust enrichment.[14] *See Bushkin Assocs., Inc. v. Raytheon Co.*, 815 F.2d 142, 149–50 (1st Cir. 1987);[15] *see generally* Restatement (Second) of Contracts § 373. And TriState contends that it is "entitled to pursue a quasi-contractual remedy" for Big Belly's alleged breach of the distribution agreement. (Pl.'s Br. at 26.) But restitution as a remedy for breach of contract is generally available only where there is a claim for damages for total breach—a circumstance that TriState has not alleged here. *See* Restatement (Second) of Contracts § 373 cmt. a ("[R]estitution is available only if the breach gives rise to a claim for damages for total breach and not merely to a claim for damages for partial breach.").

Some courts have also suggested that restitution may be an appropriate remedy for breach of contract where "unknown variables cloud a reasonably certain calculation of lost profits stemming from the breach." *ATACS Corp. v. Trans World Commc'ns, Inc.*, 155 F.3d 659, 671 (3d Cir. 1998); *accord City of Harker Heights v. Sun Meadows Land, Ltd.*, 830 S.W.2d 313, 317 (Tex. App. 1992) ("Restitution . . . is often an appropriate measure of recovery for breach of contract, for example in a case where the complaining party's expectation damages are too hard to measure."). But TriState has not suggested any uncertainty in measuring its expectation

---

[14] "Contract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of his bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed." Restatement (Second) of Contracts § 347 cmt. a (1981). Under certain circumstances, such as where the injured party "cannot prove his profit with reasonable certainty," the injured party may choose to "ignore the element of profit and recover as damages his expenditures in reliance." *Id.* § 349 cmt. a. Reliance damages attempt to put the injured party "back in the position in which he would have been had the contract not been made." *Id.* § 344 cmt. a.

[15] To the extent that TriState seeks restitution as an alternative remedy for Big Belly's alleged breach of contract, Massachusetts law would arguably govern, given that Massachusetts law governs the breach-of-contract claim.

damages.

I will thus grant Big Belly's motion to dismiss TriState's unjust-enrichment claim.

### E.    Massachusetts's Consumer-Protection Statute (Count VII)

Finally, TriState alleges that Big Belly engaged in "[u]nfair methods of competition" or "unfair or deceptive acts or practices" in violation of Massachusetts's consumer-protection statute, Mass Gen. Laws Ann. ch. 93A, § 2. The statute provides, in relevant part:

> Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two . . . may, as hereinafter provided, bring an action . . . for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper.

*Id.* § 11.

Big Belly argues that TriState's claim under the Massachusetts statute must be dismissed because the alleged wrongful conduct did not take place "primarily and substantially" within the Commonwealth of Massachusetts.

But I rejected this very same argument in my prior opinion granting TriState's motion to amend its complaint to add a new claim under the Massachusetts statute, and concluded that TriState's proposed amendment adding this claim would not be futile—that is, that the claim could survive a motion to dismiss under Rule 12(b)(6). *See TriState HVAC Equip.*, 2011 WL 3047784, at *2. As I explained then, the question whether the relevant conduct occurred primarily and substantially within Massachusetts is a fact-intensive inquiry, and one that is not appropriate at the motion-to-dismiss stage, when the factual record has not yet been developed. Because Big Belly has made no new arguments here, I will deny Big Belly's motion to dismiss

24

this claim.

**III.    CONCLUSION**

For the reasons set forth above, I will grant in part and deny in part Big Belly's motion to dismiss counts II–VII of TriState's amended complaint. An appropriate order accompanies this memorandum.